UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARILYN KUNELIUS,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF STOW, et al.<br><br>Defendants. | CIVIL ACTION NO. 05-11697-GAO |

## DEFENDANTS' MOTION TO CERTIFY QUESTION OF STATE LAW TO THE SUPREME JUDICIAL COURT

Defendants the Trust for Public Land ("TPL"), Craig A. MacDonnell, and the Town of Stow ("Town"), hereby jointly move in accordance with Rule 1:03 of the Supreme Judicial Court of the Commonwealth of Massachusetts ("SJC") that this Court certify the following question to the SJC:

> Does the exercise of a right of first refusal under Chapter 61 of the Massachusetts General Laws leave a liquidated damages provision in the Purchase and Sale Agreement intact and enforceable?

In support of its motion, Defendants state as follows:

1. The resolution of this question of Massachusetts law is likely to be determinative of the central issue in this action, and there is no controlling precedent in the decisions of the SJC or Massachusetts Appeals Court.

2. In this case, the parties differ fundamentally on whether a liquidated damages provision survives as the sole remedy in the context of a Chapter 61 right of first refusal. Chapter 61 (and its analogues in Chapters 61A and 61B) embody the General Court's intent to encourage the preservation of forest, agricultural/horticultural, and recreational land by

conferring favorable assessment and taxation on land subjected to its statutory schemes. In return, landowners taking advantage of the offered tax savings must afford the city or town in which the land is located a first refusal option to meet a bona fide offer to purchase the land. *See* M.G.L. c. 61, § 8. Recognizing the limited financial resources of many municipalities, the statute expressly authorizes municipalities to assign their first refusal rights to non-profit conservation organizations for the purpose of continuing the forest, agricultural, or recreational use of the majority of the property. This is ultimately what happened here.

3. Plaintiff Marilyn Kunelius elected to have the land in dispute valued and assessed under Chapter 61. (Complaint ¶ 13.) In October 2002, Kunelius entered into a Purchase and Sale Agreement ("P&S") to sell the land to a private real estate developer. (Complaint ¶ 11.) Having elected to have her land valued and assessed under Chapter 61, Kunelius was bound to offer the Town a right of first refusal to meet the bona fide offer. M.G.L. c. 61, § 8. The Town then had 120 days in which to assess whether or not to exercise the option or solicit a non-profit organization to accept assignment of the option. *Id.* By the end of the 120-day option period, TPL, a national non-profit conservation organization, accepted assignment of the right of first refusal from the Town and exercised the right of first refusal to meet the bona fide offer. (Complaint ¶ 18.) Ultimately, however, TPL failed to perform under the terms of the P&S. (Complaint Ex. 7.) In doing so, TPL forfeited the entirety of its deposits (a $10,000 initial deposit plus numerous $1500 monthly deposits paid in the months following the assignment) pursuant to the liquidated damages clause in the P&S. (Complaint Exs. 1 and 11.) Defendants contend that these deposits are Kunelius' "sole remedy in equity and law" under the plain language of the P&S. Kunelius contends that she is entitled to specific performance and damages from TPL and the Town.

4. The enforceability of the liquidated damages provision is the central dispute in this case. Defendants contend that liquidated damages provisions remain intact and enforceable when rights of first refusal under Chapter 61 are exercised by towns or non-profits pursuant to purchase and sale agreements containing liquidated damages provisions. Plaintiff contends that an exercise of a right of first refusal under Chapter 61 creates an extra-contractual obligation of absolute performance and renders any liquidated damages provision inoperable. *See* Plaintiff's Opposition to Motion to Dismiss, Case No. 05-11697 GAO, pp.10-11. Indeed, Plaintiff takes the position that although she and a commercial buyer negotiated a liquidated damages provision as the sole and exclusive remedy under the P&S and although TPL stepped into the shoes of the commercial buyer in that P&S, TPL and the Town cannot avail themselves of that contractual liquidated damages provision and must be held to a higher standard of performance than the commercial buyer.

5. The SJC has never considered this issue. Although there are decisions of the SJC interpreting Chapter 61, *see, e.g.*, *Town of Franklin v. Wyllie*, 443 Mass. 187 (2005), as well as decisions considering the enforceability of liquidated damages clauses generally, *see, e.g.*, *Kelly v. Marx*, 428 Mass. 877, 880 (1999), there is no decision of the SJC or any other Massachusetts court directly addressing the enforceability of a liquidated damages provision in the context of Chapter 61.

6. The closest decision of the SJC does not resolve the fundamental question presented here. In *Town of Franklin*, the SJC stated that general principles governing rights of first refusal are not altered in the context of Chapter 61. 443 Mass. at 195-96 (holding that an exercise of the right by a town pursuant to Chapter 61 would require the town to purchase the land on "substantially the *same* terms and conditions as presented in the agreement").

Defendants have asked this Court to apply this decision to hold that the liquidated damages provision was just one of those "terms and conditions" to which TPL and Kunelius became bound. Plaintiff has asked this Court to interpret that decision to bind the Town and TPL to pay the purchase price. Ultimately, neither the *Town of Franklin* decision nor any other decision of the SJC directly answers the question because no case has addressed the precise effect of a liquidated damages provision following the exercise of a Chapter 61 right of first refusal. Certification is appropriate where, as here, the SJC has never been presented with the question facing the Court, and the parties disagree on the application of existing SJC decisions.

7. After hearing a summary of the issues at the initial scheduling conference on October 12, 2005, this Court raised the question of whether certification of this issue was appropriate. Plaintiff, though her counsel, agreed that these are issues of first impression that would be appropriate for certification.

8. Defendants moved to dismiss the Complaint, asking the Court to render a decision addressing, among other things, this question. At the hearing on the Motion to Dismiss, plaintiff, through her counsel, again acknowledged that this case presents unique circumstances never before considered by the SJC. "[T]his is a unique case. And as I listen to the descriptions of what these cases hold, none of them apply." *See* Transcript of the Hearing on the Motion to Dismiss, December 15, 2005, p. 30:17-20. At the time, Defendants argued that certification was not necessary for this Court to reach a decision dismissing the case. Defendants believed—and still believe—that there is *no* basis in Massachusetts law for a finding that the liquidated damages clause was rendered invalid by exercise or assignment of the first refusal right under Chapter 61. In the Court's written decision on the Motion to Dismiss, the Court declined to dismiss the case entirely without expressing any view on the enforceability of the liquidated

4

damages provision following the Chapter 61 assignment. *See* Memorandum and Order, May 17, 2006, Case No. 05-11697 GAO, Docket No. 24. Without any direction from the Court on this issue, the question of whether the liquidated damages provision survives as the only remedy is still open and should be certified to the SJC.

9. Resolution of this question has broad implications for the viability of first refusal rights under Chapter 61, not only for the parties to this action, but for all towns and non-profit conservation organizations seeking to conserve open space. The position advanced by Kunelius, if adopted, could bring the preservation of forest, agricultural, and recreational land in Massachusetts to a chilling standstill. In the meantime, without any certainty in the law, towns and non-profits will be wary of exercising rights of first refusal under Chapters 61, 61A, or 61B, even in the face of the potentially significant conservation benefits that exercising such rights might yield.

10. Critical to the decision to exercise a right of first refusal is the ability to evaluate the legal obligations created by the exercise. It is rare that a town or nonprofit has funds appropriated for a purchase prior to the conclusion of the 120-day notice period. Because a town only has 120 days in which to assess the offer and decide whether or not to exercise its first refusal right, it generally must make this decision before holding a town meeting to vote on how much, if any, town funding will be appropriated for the purchase. In recognition of this time constraint, courts have held that towns are not expected to raise the full purchase price in the 120 days prior to the exercise of the right of first refusal. *Meachen v. Hayden*, Misc. Case No. 240129, 6 Land Ct. Rptr. 235, 238 (Mass. Land Ct. Aug. 6, 1998). Without any authority to purchase land absent valid appropriation, a town necessarily must be given some certainty of the legal obligations that will follow its exercise of a first refusal right in order to adequately assess

5

the financial risks of exercise. If the purchase and sale agreement contains an enforceable liquidated damages provision, the town will know precisely what it risks forfeiting if it fails to close on the property.

11. These arguments apply with equal force to non-profit organizations deciding whether to accept an assignment of a first refusal right from a town. In practice, much of the 120-day option period is consumed by the town's deliberations, leaving nonprofits with very little time in which to assess the preservation value of the property, determine the risks and benefits, assess fundraising possibilities, and coordinate with local interest groups before they are forced to decide whether or not to exercise the right of first refusal. Vital to this assessment is the ability to evaluate the contract terms to which the nonprofit will become bound. If the legal implications of assignment are unclear, nonprofits will be unable to determine the financial risks of liability to which they would be exposed. No nonprofit could expose itself to such uncertainty. As a result, preservation of open space through Chapter 61 and its analogues would cease. This chilling effect is contrary to the very purpose of Chapter 61, which is to *encourage* the preservation of open space through the assignment and exercise of first refusal rights. *See, e.g.*, *Town of Franklin*, 443 Mass. at 196; *Raffi v. Johnson*, Misc. Case No. 231739, 5 Land Ct. Rptr. 139, 143 (Mass. Land Ct. Aug. 18, 1997). It is therefore imperative that the parties and future litigants have a clear interpretation of the enforceability of a liquidated damages clause upon the exercise of a right of first refusal under Chapter 61.

12. In light of the absence of controlling case law and the far-reaching implications of a decision on this issue, Defendants believe certification to the SJC is necessary.

WHEREFORE, Defendants respectfully request that this Court certify this question to the SJC and stay discovery until the SJC decides the question.

|  |  |
|---|---|
|  | Respectfully submitted, |
| THE TOWN OF STOW | THE TRUST FOR PUBLIC LAND |
| By its attorneys, | By its attorneys, |
| /s/ Deborah I. Ecker<br>Deborah I. Ecker, Esq. (BBO # 554623)<br>Brody Hardoon Perkins & Kesten LLP<br>One Exeter Plaza<br>Boston, MA 02116<br>(617) 880-7100 | /s/ Dahlia S. Fetouh<br>Richard A. Oetheimer (BBO # 377665)<br>Dahlia S. Fetouh (BBO # 651196)<br>Goodwin Procter LLP<br>Exchange Place<br>Boston, MA 02109<br>(617) 570-1000 |
|  | CRAIG A. MACDONNELL, |
|  | By his attorneys, |
|  | /s/ James B. Conroy<br>Peter E. Gelhaar (BBO # 188310)<br>James B. Conroy (BBO # 096315)<br>Donnelly, Conroy & Gelhaar, LLP<br>One Beacon Street, 33rd Floor<br>Boston, MA 02108 |
| Dated: November 1, 2006 | (617) 720-2880 |

## **LOCAL RULE 7.1(A)(2) CERTIFICATION**

I, Dahlia S. Fetouh, hereby certify that Richard Oetheimer of Goodwin Procter LLP conferred in good faith with counsel for plaintiff in an attempt to resolve or narrow the issue presented in this motion prior to filing, and that we were unable to resolve or narrow the issues.

/s/ Dahlia S. Fetouh
Dahlia S. Fetouh

## **CERTIFICATE OF SERVICE**

      I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 1, 2006.

                                         /s/ Dahlia S. Fetouh
                                        Dahlia S. Fetouh

LIBA/1739864.4