UNITED STATES DISTRICT COURT
(DISTRICT OF MASSACHUSETTS)

| | |
|---|---|
| MARILYN KUNELIUS, ) <br>       PLAINTIFF ) <br> ) <br> V. ) <br> ) <br> TOWN OF STOW separately, A ) <br> PARTNERSHIP OF UNKNOWN NAME ) <br> BETWEEN TOWN OF STOW and THE ) <br> TRUST FOR PUBLIC LAND, THE ) <br> TRUST FOR PUBLIC LAND separately ) <br> and CRAIG A. MACDONNELL, in his ) <br> individual capacity, ) <br>       DEFENDANTS ) <br> ) | CIVIL ACTION NO. 05-11697-GAO |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY
QUESITONS OF STATE LAW TO THE SUPREME JUDICIAL COURT**

NOW COMES the Plaintiff in Opposition to the Defendants' Motion to Certify a

Question of State Law to the Supreme Judicial Court, stating as follows:

**I. The Defendants' Suggested Question for Certification Misrepresents the
Nature of The Issues and Counts before this Court and therefore Should not be
Submitted to the Supreme Judicial Court**

The Defendants' suggested question for a certification to the SJC is as follows:

> "Does the exercise of a right of first refusal under Chapter 61 of
> the Massachusetts General Laws leave a liquidated damages
> provision in the Purchase and Sale Agreement intact and
> enforceable?"

The above question materially oversimplifies the issues that are before this Court.

The proposed question, by implication, includes two counterfactual components. The first

is that the question disregards the clear language of the Supreme Judicial Court in the

case of *Town of Franklin v. Wyllie*, 443 Mass. 187, __, __ N.E.2d __, 2005, which

considered the language of Chapter 61. In that case the SJC dealt specifically with the direct link between the exercise of the right of first refusal and the obligation of paying the purchase price.

> "The present language of the statute, nevertheless, obligates the Town, if it is to exercise its right of first refusal to "meet a bona fide offer to purchase"."

 (*See Town of Franklin v. Wyllie*, *supra*).

Since there was an unequivocal and undisputed exercise of the right of first refusal by the Defendants, there is no need for a certification as to whether the liquidated damages clause applies.

 Second, the question denies the existence of the Complaint and the allegations contained therein. The Defendants would like to pretend that, having exercised the right of first refusal under Chapter 61A, they simply failed to purchase the property and thus they can rely on the liquidated damages clause as if they were the original buyer. The Complaint alleges that Defendants' behavior, prior to their reliance on the liquidated damages clause, gives rise to separate and distinct Counts. <u>None of these Counts are affected by the Certification regardless of the outcome of the liquidated damages clause provision</u>.

## II. SJC Rule 1:03

Obviously, the above question, in effect, would be asking the SJC to become the trier of fact in this case. This is clearly not the purpose of a certification.  Under Rule 1:03 section 3 entitled, "Contents of Certification Order," the Rule states:

> "Certification Order shall set forth
> (1) the question of law to be answered; and

(2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy under which the questions arose."

The above requirements anticipate that there are "facts that have been decided" or stipulated to which would enable the SJC to evaluate the precedential value of the proposed question. There are no facts that have been decided in this case. Section 4 of Rule 1:03 anticipates that the SJC may require "all or portions of the record which would be necessary for the SJC's answering of the certified question." Section 1 of Rule 1:03 demonstrates that the purpose of the certification applies when there is "no controlling precedent."

As the Court is well aware, there are numerous Counts to the Complaint that are unrelated to and independent of the liquidated damages clause. The Complaint contains six remaining Counts including Contract (Count I), M.G.L. c. 93A (Count II), M.G.L. 93A against the Partnership of the Town and TPL (Count III), Intentional Interference with Contractual Relationship (Count V), Civil Right Violations under 42 U.S.C. section 1983 (Count VI), and Fraud and Misrepresentation (Count VII). These various Counts must be considered when this Court evaluates the Motion for Certification. The Court's evaluation will lead the Court to conclude that the matter before it is very fact dependent and that those facts are critical to the various Counts but unrelated to the liquidated damage issue. The following are just a few examples:

(a) Virtually immediately after the Defendants exercised the right of first refusal, the Defendants informed the Plaintiff that the purchase price was more than they wanted to pay and demanded that the Plaintiff lower her sale price from $1,116,900.00 to $800,000.00. Exhibit 11 to the Complaint is the July 6, 2004

TPL demand to purchase the property at $800,000.00. In other words, the Defendants elected not to comply with the basic element of the P&S Agreement, i.e. the purchase price. This fact is undisputed. No certification question will alter the fact that the SJC has already decided that the Defendants cannot change terms of the P&S Agreement after they exercised the right of first refusal.

> "There is no indication, however, that the Legislature intended that a municipality's "first refusal option" to purchase would encompass the right to purchase such land on different terms and conditions than set forth in the "bona offer." See *Sudbury v. Scott, supra* at 299 n. 14 (§14 must be read in "commonsense fashion to effectuate purpose of the statute"). We discern no compelling reason to read such an intention in the statue. Accordingly, to meet the purchasers' bona fide offer, the town was required to purchase the land on substantially same terms and conditions as presented in the agreement. (See *Stone v. W.E. Auchbuchon Co.,* 29 Mass. App. Ct. 523, 527 (1990) ("It is basic, of course, that an option may be exercised only in strict compliance with its terms"))."

(*See Town of Franklin, supra*).

If the Defendants' refusal to pay the purchase price after they exercised the right of first refusal is not a material change in the terms and conditions of the P&S Agreement, then one would be hard pressed to explain what a material change would be. The proposed certification question "pretends" that the Defendants made no efforts to change the purchase price in violation of the Supreme Court's holding in *Town of Franklin*. The proposed certification question pretends that the liquidated damages clause somehow exists in a vacuum of facts. Obviously, it does not.

(a) The Defendants, after the exercise of the right of first refusal, refused to comply with the payment methods explicitly outlined in the P&S Agreement. (*See*

Exhibit 12 of the Complaint). Exhibit 12 clearly demonstrates that the Board of Directors of TPL:

> "will not approve any borrowing to bridge a fund raising gap because the prospects for raising funds necessary to repay the loan required are not encouraging. Further, any bridge loan would be for an amount greater than the land would be worth, even if the subdivision were approved."

Under the terms of P&S Agreement, the Plaintiff had agreed to take back a Note from the original buyer in the amount of $400,000. Having exercised the right of first refusal, the Defendants unilaterally decided that they would not sign such a Note for $400,000. In other words, for the second time the Defendants elected to unilaterally change the contract terms and requirements in an obvious violation of the SJC's holding in *Town of Franklin.*

(b) Shortly after the exercise of their right of first refusal, the TPL elected to attempt to develop the property in a materially different way then was anticipated by the P&S Agreement. TPL's "different" plan required extensive Town approval which TPL could not obtain. The Defendants' decision to change the development was fundamentally changing the terms of the P&S Agreement which is prohibited. This is not a disputed fact. The Defendants state:

> "… we have spent a considerable amount of time in the last week or so <u>trying to find a way to reconfigure this project to meet adequately the various needs of your client, the Town of Stow, the Friends of Red Acre (FOR A) and the Stow Conservation Trust (SCT)</u>." [emphasis added].

(*See* Exhibit 12 to the Complaint, September 9, 2003 letter of TPL to Plaintiff's counsel). TPL was seeking a way to sell off the property through a subdivision to reimburse itself for the purchase price, and it sought permission of the Town to

develop the property. The subdivision violated zoning by-laws and various overlay district limitations on the property. The Defendants, therefore, because they did not want to pay the purchase price, sought to develop the property in a way that the Town would not allow. This meant for the third time that Defendants rejected the terms of the Contract which is prohibited under *Town of Franklin, supra.*

Items (a) and (b) above demonstrate how simplistic the Defendants' proposed certification question is. Items (a) and (b) directly affect the Contract claim (Count I) and the Unfair and Deceptive Practices claims (Counts II and III) and are inextricably related to the Fraud and Misrepresentation (Count VII) and Intentional Interference claims (Count V) because it appears that Defendants anticipated the new plan before they exercised the right of first refusal. In order for any question to be certified to the Supreme Judicial Court, such a question should not be submitted as if certain facts do not exist. The Defendants' proposed certification question does not remotely present to the SJC the facts confronted by this Court as outlined in the Complaint.  As such, the certification would be a waste of time.

### III. The Defendants Misstate the Holding of *Town of Franklin*

The Defendants' Joint Motion relies on a disingenuous reading of SJC's holding in *Town of Franklin.* The Defendants state in their Motion at para. 6 on page 3 that *Town of Franklin* stands for the proposition that an exercise of the right by a town pursuant to Chapter 61 would require the town to purchase the land on substantially the same terms and conditions as presented in the agreement and therefore that the liquidated damages clause as a term of the after P&S can be relied on by Defendants.

In *Town of Franklin,* the town took the position that it did not have to comply with Chapter 61's 120-day time limitation to exercise its right of first refusal, arguing that the P&S between the original buyer and seller had several contingencies, most notably an unfixed purchase price, which the Town thought rendered the P&S an executory contract until the contingencies had been met or had lapsed. The town argued that it did not need to exercise its right under Chapter 61 until it determined that all of the contingencies had been achieved, including the contingency that the town itself grant the necessary permits that would determine the purchase price pursuant to a formula set forth in the P&S. The Supreme Judicial Court rejected the circular logic of the town and stated that:

> "[T]here was nothing in the extensive legislative history of G.L. c. 61A, the unambiguous language, of section 14, or in our cases interpreting that language which would allow us to read into the statute terms an exclusion for 'bona fide offers' contained in a fully executed and enforceable purchase and sale agreement."

(*See Town of Franklin, supra*). This quote suggests that the SJC found the legislative history and the ambiguous language of the statute as well as its own holdings as being clear and unequivocal. The proposed question attempts to invalidate the legislative intent, the clear language of the statute, so as to allow the Defendants, having exercised the right of first refusal, to pretend that they were the original buyer without regard to the fact that Chapter 61 applies. The facts of the case demonstrate that the Defendants never put themselves into the position of the original buyer after the exercise of the right of first refusal. They rejected all of the essential components agreed to by the original buyer. The following demonstrates how clearly the SJC currently views the legislative intent of Chapter 61:

> "There is no indication, however, that the Legislature intended that a municipality's "first refusal option" to purchase would

7

encompass the right to purchase such land on different terms and conditions than set forth in the "bona offer." See *Sudbury v. Scott, supra* at 299 n. 14 (§14 must be read in "commonsense fashion to effectuate purpose of the statute"). We discern no compelling reason to read such an intention in the statue. Accordingly, to meet the purchasers' bona fide offer, the town was required to purchase the land on substantially same terms and conditions as presented in the agreement. (See *Stone v. W.E. Auchbuchon Co.,* 29 Mass. App. Ct. 523, 527 (1990) ("It is basic, of course, that an option may be exercised only in strict compliance with its terms")…

The present language of the statute, nevertheless, obligates the Town, if it is to exercise its right of first refusal to "meet a bona fide offer to purchase"."

(*See Town of Franklin, supra*).

The SJC's decision makes clear that the town, once it exercised its right of first refusal, was required <u>to purchase the land</u> at the bona fide purchase price. It does not say that the town "can think about it," "contemplate it" or "decide whether it will buy it later or not at all." It is the bona fide purchase price that must be paid, not a different price to be negotiated by TPL, not a different price to be demanded or threatened by TPL.

Thus, the Defendants' continual assertion that the question certification essentially involves a dispute concerning the liquidated damage provision is ridiculous.

## IV. Defendants' Justifications in Paragraphs 10 and 11 of their Motion Are Disingenuous at Best

The Plaintiff respectfully requests that this Court, in assessing the validity of the Defendants' Motion, consider the absurdity of the arguments proffered in paragraphs 10 and 11 of the Motion. In essence, Defendants are now arguing that they did not have time to consider how to finance the purchase. They make this assertion even though the Town and TPL both participated in an extensive evaluation of whether to exercise the right of first refusal or not. The Defendants state:

8

> "These arguments apply with equal force <u>to non-profit organizations deciding</u> whether to accept an assignment of a first refusal right from a town. In practice, much of the 120-day option period is consumed by the town's deliberations, leaving nonprofits with very little time in which to assess the preservation value of the property, determine the risks and benefits, assess fundraising possibilities, and coordinate with local interested groups before they are forced to decide whether or not to exercise the right of first refusal."

(*See* paragraph 11 of the Motion to Certify). The above argument attempts to suggest that somehow TPL is acting on behalf of all non-profit organizations everywhere which might not have had the opportunity to review a purchase prior to having the right of first refusal assigned to them. TPL is arguing a "class action defense" in which it hopes to hide behind what might or could occur to some other non-profit in the future. The fact is that what might or could occur to some other non profit is irrelevant to the facts in this case.  TPL had many months to evaluate the purchase in conjunction with the Town. The above justification in paragraph 11 of the Motion is misleading at best and most certainly is frivolous since it does not reflect the facts of the case. Certifying the proposed question based upon the Defendants' misleading presentation would be wholly inappropriate as can be demonstrated by reviewing Exhibit 5 to the Complaint which was authored by the Defendants themselves. Exhibit 5 to the Complaint is an "undisputed" document which makes unequivocally clear that, despite the Defendants' assertion in paragraphs 10 and 11 to contrary, the Town exercised <u>due diligence</u> with regard to every issue discussed in paragraphs 10 and 11 of the Motion.

> **"After due diligence and pursuant to Massachusetts General Laws, Chapter 61, section 8, the Stow Board of Selectmen transferred completely to Trust for Public Land the Town's right of first refusal to acquired said property."**

(*See* Exhibit 5 to the Complaint, September 24, 2003 letter of Board of Selectmen to Plaintiff's counsel, also attached as Exhibit A to this Memorandum).

Therefore, one of the issues underpinning the proposed question is false. This is not a case where the Defendants did not have time to assess the purchase. In fact the exact opposite is true:[1] they admitted they exercised due diligence. To certify a question to SJC based upon this issue would not be appropriate since the statute and the SJC holdings are clear. As further evidence of the frivolousness of Defendants' assertion, the Plaintiff has attached as Exhibit B an article from *The Beacon Villager,* dated January 16, 2003, which clearly demonstrates that many weeks before the actual exercise of the right of the first refusal, TPL was deeply involved in assessing the property and the exercise of the right of first refusal. In light of Exhibit 5 to the Complaint, attached hereto as Exhibit A and Exhibit B, the Plaintiff respectfully suggests that the justification being asserted by all of the Defendants that somehow they lacked time to evaluate the purchase is materially misleading and wholly irrelevant to the issue before the Court.

It is important to note that Defendants *elected* to exercise the right under Chapter 61— they were not compelled, under any statutory mandate, to purchase the Property. Chapter 61 is structured so that the town may consider and then decline to meet the purchase price, in which case, the seller and the original buyer complete the sale. The town has no obligation of any kind if it declines to exercise the right of first refusal. However, once it does exercise the right, that decision is the town's voluntary and binding step, which terminates the rights of the original buyer under its *bona fide* P&S, and *obligates* the town or its assignee to purchase the Property. It is a binding notice that

---

[1] Plaintiff respectfully suggests that the raising of the "lack of time to assess the purchase" is nothing short of a "red herring." Chapter 61 and the SJC decisions establish 120 days to evaluate and exercise the right of first refusal and the purchase must occur within a "reasonable period."

irreversibly and materially alters the position of the seller and the original buyer.  The time for "considering" the exercise of the right is before the actual exercise, not after the exercise of the right.

Plaintiff respectfully suggests that the argument raised in paragraphs 10 and 11 of the Motion borders on bad faith. Exhibit 4 of the Complaint is the February 13, 2003, exercise of the right of first refusal signed by Dorothy Nelson Stookey, regional counsel for TPL. Indeed, Exhibit 4 includes the payment $11,500 of the purchase price as defined in the P&S Agreement. There can be no stronger indication that, at the time of TPL's exercise of the right of first refusal, TPL and the Town understood the significance of their actions and acknowledged the purchase price and initiated the payment of the purchase price.

### V. Even the Liquidated Damage Defense raised by the Defendants Contains Material Issues of Fact which Render It an Inappropriate Certification Issue

As with everything else related to this matter, the Defendants attempt to convince the Court that the "liquidated damages clause" is a clean and undisputed issue and is appropriate for certification. However, it is not. A review of the P&S Agreement demonstrates that there was no deposit made as defined in paragraph 7 of the P&S Agreement. Defendants assert that paragraph 21, which refers to "liquidated damages," was meant to include "earnest money payments" as "deposits."  Plaintiff asserts that earnest money payments were payments of the purchase price required under the P&S payment schedule. Indeed, Exhibit 4 of the Complaint demonstrates that TPL made payments to the Plaintiff not under the provisions of paragraph 7, but rather under the provisions of paragraph 31 entitled "Earnest Money." Such earnest money is clearly payments of the purchase price. Paragraph 7 of the P&S demonstrates that no monies

were paid as "deposits," as anticipated by the P&S Agreement. Therefore, there is a fundamentally critical issue of fact that necessarily must be decided prior to evaluating the "liquidated damages clause defense," even assuming that it existed in a "vacuum," which it most certainly does not. Submission of a certification to the SJC without discovery, depositions and testimony on this issue would be a waste of time. In addition, the liquidated damages clause and its applicability in general are linked directly to the goals of the original buyer, which by definition could not have been the goals of TPL when it exercised the right of first refusal.

Without repeating the Plaintiff's entire Opposition to Defendants' Motion to Dismiss, the Plaintiff again points out that the Defendants' reliance on the liquidated damages clause presumes that the Plaintiff could have established and evaluated liquidated damages in connection with the original buyer and included in her evaluation the possibility that:

1. TPL would have subsequently taken over the contract (Plaintiff have never even heard of TPL);

2. TPL would have subsequently required different purchase price;

3. TPL would have subsequently changed the terms of the contract; and

4. TPL would subsequently defaulted entirely having unilaterally changed the terms and conditions of the P&S.

In other words, the Plaintiff would have never agreed to any liquidated damages clause where such clause could be applied in the future to a different purchase price and different terms and conditions. The Plaintiff would have never agreed to any liquidate damages clause that would have applicable to unforeseenable changes in the terms of the

contract as asserted by TPL. It must be remembered that the Plaintiff agreed to the original P&S Agreement and the original purchase price because there was virtual certainty of payment. The original buyer proposed development under M.G.L. c. 40B which eliminated the need of special permits or variances from the Town. The purchase price was accepted by the seller because of the certainty that the Town could not prevent the proposed development. TPL's unilateral changing of the terms after it exercised the right of first refusal eliminated the certainty of payment because TPL elected to attempt to get special permits and variances for a subdivision that was not contemplated under the original terms of P&S Agreement. This made the certainty of payment highly unlikely. TPL was not stepping into the shoes of the original buyer.  Obviously, the liquidated damages must be related to risk taking and certainty of payment by the seller. It is unlikely that the SJC would entertain the proposed question because of the utter lack of foreseeability of the liquidated damages clause as it relates to TPL.

## VI. Defendants' Tactic of Seeking Certification Has the Effect of Denying Plaintiff Discovery

The Plaintiff points out that the Complaint was filed on August 16, 2005, approximately 15 months ago. The Hearing on the Motion to Dismiss occurred on December 15, 2005, almost one full year ago. On May 17, 2006, this Court dismissed one Count of the Complaint and denied the remaining Motion to Dismiss. The Court did not schedule the Scheduling Conference until the Plaintiff called the Court on or about August 10, 2006 because the Plaintiff was anxious to commence discovery. At the present time, because of the postponement of the Scheduling Conference, the Plaintiff has been prevented from taking any discovery whatsoever for a full 15 months after filing the Complaint. The Plaintiff, in her Complaint, has asserted that the Defendants' so-called

13

defenses are pre-textual and misrepresent Defendants' actual intentions and goals. The

Plaintiff reasonably expects that the discovery will demonstrate that Defendants have

acted in bad faith and have violated her civil rights and that the Defendants and

particularly TPL have at all times possessed the funds necessary to purchase the property.

The Plaintiff also believes that discovery will demonstrate that the Town and TPL were

aware that their actions were harming the Plaintiff. Indeed, Exhibit 6 to the Complaint,

which is a Board of Selectmen document states:

> "Yes, we [the Town of Stow] ceded our right of first refusal to
> TPL and TPL certainly has the assets to make good on the
> transaction. But they have reneged, and the contract has been
> breached. The seller has certainly been harmed by our actions and
> TPL's inactions. Should a suit against TPL be initiated, it is likely
> the town would become involved. At a minimum the town had
> committed to contribute $400,000 to the deal, and the actions of
> many could be interpreted as implying the town was a partner in
> the deal.
>
> A way to avoid ever finding out about our liability is to help to
> reinstate the original Mosaic Commons deal. The agent for the
> seller is very eager to reopen negotiations with Mosaic Commons.
> But he is reluctant to do so without some indication from the town
> that the development would be supported. The last vote the
> Selectmen took on this issue was the Chapter 61 vote, which was
> clearly against Mosaic Commons. Why should Mosaic Commons
> spend any time or money on this property if the Selectmen are
> against their efforts? A resolution in support of Mosaic Commons
> on the Kunelius property would offer them encouragement."

The above quote is relevant to the Defendants' Motion for a number of reasons:

1.     The quote demonstrates that the Town knew that TPL had the funds to purchase

the Property. (A fact which is now denied by TPL). This would strongly suggest

that TPL has consistently misrepresented to this Court its inability to purchase the

property. (This fact runs directly to the Fraud and Misrepresentation Count and

directly to the "pre-textual" defenses raised in connection with the Civil Rights Count).

2.     That TPL and the Town were aware or should have been aware that they were deliberately damaging the Plaintiff. (This runs directly to the Intentional Interference Count).

3.     That the Town never intended to or believed that the liquidated damages clause would relieve the Town from its obligation to the Plaintiff. If it did, one would have expected some mention of the liquidated damages clause in the above quote. There is no such mention.

4.     That the Town had committed $400,000 to assist TPL in buying the property and by so doing, it was likely a partner of TPL. This would again suggest that allegations in the Complaint are not dependent on the liquidated damage provision. (This runs directly to all Counts against the Partnership).

5.     That the Town and TPL most certainly realized that their actions were proving to discourage the reinstatement of the original deal with the original buyer. As the Court is aware, there is an Intentional Interference with Advantageous Relationship claim which is also independent of any liquidated damages clause defense raised by the Defendants.

With this in mind, the Defendants' assertions in paragraphs 10 and 11 are outrageous.

### VII. Without the Facts, the Proposed Certification Question Is without Value

As can be seen from all of the above, the Defendants' Motion is simplistic and ignores the various Counts in the Complaint. The existence of the various Counts and the

allegations in the Complaint would require the wording of any certification to SJC to be

so complex and fact specific so as to render the certification by the SJC of no

precedential value. The following demonstrates what a certification would have to

include in order to allow the SJC to determine whether SJC's certification would have

some precedential value:

Where the defendant municipality and the defendant assignee:
(a)  have worked extremely closely for several months in evaluating whether the exercise of the right of first refusal was appropriate and where
(b) the defendant municipality assigns its right of first refusal under the provisions of Chapter 61A and where
(c) the defendant assignee, exercises the right of first refusal, and where
(d) the defendant assignee refuses to pay the purchase price, and where
(e) the defendant assignee refuses to accept the terms of payments under the P&S Agreement, and where
(f) the defendant assignee attempts to change the purchase price from the terms contained in the  P&S Agreement, and where
(g) the defendant assignee attempts to develop the land in a manner that materially defers from development plan in the P&S Agreement, and where
(h) the defendant assignee attempts to mislead the seller into believing that the assignee does not have the funds necessary to purchase, when it does, and where
(i) the defendant assignee and the defendant municipality actively undertake a course of action to discourage the original buyer from re-entering into the P&S Agreement after the assignee defaults,

can the defendant assignee rely on liquidated damages clause to avoid any liability for Contract, M.G.L. c. 93A, Intentional Interference with Contractual Relationship, Civil Right Violations under 42 U.S.C. 1983, and Fraud and Misrepresentation, where
(i)  the P&S Agreement lists no deposit as anticipated under the liquidated damages clause, and where
(ii) no deposit was made under the terms of the P&S Agreement but rather partial payments of the purchase price were made by the defendant assignee in accordance with the P&S Agreement, and where
(iii)the defendant municipality and the defendant assignee wish the Court to determine that the partial payments are in fact "deposits" as anticipated under paragraph 7 of the terms of the P&S Agreement?

There is virtually no value, certifying the proposed question or the above question

or virtually any combination of the two. Therefore the Defendants Motion for

Certification should be denied

Respectfully submitted,

Marilyn Kunelius,

By Her Attorney

Dated:  November 9, 2006    By:    /s/ Michael C. McLaughlin, Esq.
Michael C. McLaughlin (BBO# 337350)
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 227-2275

### CERTIFICATE OF SERVICE

I certify that this document field through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 9, 2006.

/s/Michael C. McLaughlin
Michael C. McLaughlin