UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARILYN KUNELIUS,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF STOW, et al.<br><br>Defendants. | CIVIL ACTION NO. 05-11697-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF THE TRUST FOR PUBLIC LAND'S MOTION TO QUASH PLAINTIFF'S SUBPOENA AND NOTICE OF DEPOSITION TO THE KEEPER OF THE RECORDS FOR WAINWRIGHT BANK**

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, defendant the Trust for Public Land ("TPL") hereby moves to quash a Subpoena *Duces Tecum* and Notice of Deposition served by plaintiff Marilyn Kunelius ("Kunelius") on a non-party, the Keeper of the Records for Wainwright Bank ("Wainwright"). As set forth below, the subpoena and deposition notice should be quashed as they are overbroad, harassing, and seek patently irrelevant information not reasonably calculated to lead to the discovery of admissible evidence regarding the narrow questions at issue in this matter.

**BACKGROUND**

*The Claims and Defenses in the Lawsuit*

The issues in this case are narrow. This lawsuit arises out of the proposed sale of land in Stow, Massachusetts owned by Kunelius (the "Property"). Kunelius entered into a Purchase and Sale Agreement ("Agreement" or "P&S") with Cohousing Resources, LLC, a land developer, in October, 2002. Because Kunelius had previously elected to have the Property valued and assessed under Chapter 61 of the Massachusetts General Laws, resulting in tax savings to

Kunelius, Kunelius was bound to offer the Town of Stow a right of first refusal to meet the bona fide offer. The Town voted to assign its statutory right of first refusal to TPL, a nonprofit conservation organization, as provided under the terms of Chapter 61. TPL accepted that assignment and stepped into the shoes of the Buyer in the Agreement. However, TPL was unable to complete the purchase as intended and failed to close on the Property.

Kunelius brought a complaint against TPL, the Town of Stow, and Craig MacDonnell, the Massachusetts State Director of TPL, alleging that TPL's failure under the Agreement violated state and federal law and seeking, *inter alia*, specific performance of the Agreement along with monetary damages, interest, costs, and attorney's fees. Specifically, Kunelius alleges breach of contract, violations of Mass. Gen. Laws c. 93A, intentional interference with a contractual relationship, violation of 42 U.S.C. §§ 1983, 1988, fraud and misrepresentation. Complaint at 14-22.[1] Defendants argue that Kunelius has already received the only damages to which she is entitled under any of these theories – the liquidated damages explicitly contracted for in the P&S – and that she is entitled to no more under the plain terms of the contract. The essential question in this case, thus, is whether Kunelius is limited to the liquidated damages provided for in the P&S. Plaintiff's attempt now to conduct discovery into facts well outside of this inquiry is no more than a red herring designed to distract from the infirmity of her claims.

### *The Subpoena and Notice of Deposition to Wainwright Bank*

On or about February 15, 2007, Kunelius served a subpoena *duces tecum* and a Notice of Deposition on the Keeper of Records for Wainwright Bank. Copies of the document subpoena and notice of deposition are attached hereto as Exhibits A and B, respectively. The schedules to

---

[1] The Court has already dismissed one count of Kunelius' complaint – that of intentional infliction of emotional distress. *See* Memorandum and Order, dated May 17, 2006.

the subpoena and deposition notice are identical and include eight separate topics seeking a wide variety of documents and information.

Many of the topics and requests in the subpoena and deposition notice relate to the existence of a line of credit from Wainwright Bank to TPL's New England Regional Office at the time of the P&S.  *See* Exhibits A and B.  The existence of this line of credit, acknowledged by TPL, is irrelevant to the question of Kunelius' damages in the event of a default under the P&S.  TPL has never argued and does not now argue that it failed to perform under the P&S because it could not have paid the purchase price from TPL's own funds or available credit had TPL chosen to do so.  TPL accepted assignment of the Kunelius Agreement based on projections that the purchase price could be raised from a variety of sources, including a contribution by the Town of Stow, a state grant from the Department of Housing and Community Development, private fundraising with the assistance of local conservation organizations, and limited development of a portion of the Property, as expressly permitted under Chapter 61.  *See, e.g.,* Deposition of Craig A. MacDonnell at 54, 100.  TPL experienced a catastrophic fundraising failure and made the decision not to resort to its own funds to complete the purchase where there was no prospect of completing TPL's mission by raising sufficient funds to recover TPL's investment and transfer the Property to a long-term steward.  *See, e.g.,* Deposition of Craig A. MacDonnell at 137-40.[2]

---

[2] Whether or not TPL had sources from which it could have obtained funds to close on the Property is immaterial to the question of damages in the event of a failure to perform under the Agreement.  *See, e.g., Peroncello v. Donahue*, 448 Mass. 199, 203-204 (stating that liquidated damages clauses "*will be enforced* so long as 'at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to occur in the event of a breach'") (emphasis added) (quoting *Kelly v. Marx*, 428 Mass. 877, 879 (1999)).  Nothing in the case law suggests a liquidated damages clause will only be enforced where there is a showing of a lack of funds.  Indeed, in rejecting the "second look" doctrine, which previously allowed courts to consider the enforceability of a liquidated damages clause at the time of the breach, the Supreme Judicial Court implicitly held that evidence of the financial capability of the buyer at time of default is not only irrelevant but should not even be admissible.  *See Kelly v. Marx*, 428 Mass. 877, 881 (1999) (rejecting "second look" approach because, among other things, it "undermines the peace of mind and

3

Kunelius' counsel has already questioned Mr. MacDonnell in deposition about the availability of the Wainwright Bank line of credit and the circumstances under which TPL would consider the use of the line of the credit. *See, e.g.,* Deposition of Craig A. MacDonnell at 108-16, 120, 230-33. Any further discovery on this issue is inappropriate. The question before the Court is simply whether Kunelius is entitled solely to her liquidated damages under the Agreement or whether she is entitled, as she claims, to more. Facts concerning TPL's line of credit with Wainwright Bank will not aid in this inquiry.

However, Kunelius' fishing expedition does not end with knowledge of the existence of the line of credit alone. Instead, her requests extend far beyond the availability of this single line of credit at the time of the closing to matters that are not even tangentially related to the claims and defenses in this lawsuit. Indeed, her requests seem calculated to obtain information on matters wholly unrelated to the claims in this litigation in the hopes of stirring up some controversy to distract from the lack of legal and factual support for her position. Specifically, Kunelius appears to be fishing for information about the irrelevant relationship between TPL and Wainwright in the hopes of accusing TPL and/or Wainwright of wrongdoing related to so-called "insider loans," simply because the co-founder and co-chair of the Board of Directors of Wainwright, Robert Glassman, used to be a member of the New England Advisory Council of TPL. *See* Exhibit A at 3 (Requests 2, 3, 7).[3] What should be obvious from these requests and this theory is that it bears *no* relevance to whether Kunelius is entitled to any damages over and above the contracted-for liquidated damages. Whether or not Wainwright or TPL had a

---

certainty of result the parties sought when they contracted for liquidated damages") (internal citation and quotation omitted).

[3] The New England Advisory Council ("NEAC") no longer exists and Mr. Glassman no longer serves on any board to TPL. When NEAC was in existence, it met only once or twice a year to provide advice to TPL. NEAC was never a decision-making body for TPL. Since the Fall of 2005, Mr. Glassman has only been an

4

relationship that gave rise to any disclosure requirements, and whether or not Wainwright or TPL complied with those requirements, does not affect the outcome in this case.

Indeed, each of Kunelius' requests fails as overbroad in scope and time, and as not reasonably calculated to lead to admissible evidence:

- All applications of TPL for a line of credit with Wainwright—regardless of the point in time, the applicability of the requested line of credit, or the office of TPL seeking a line of credit (Request 1);

- All "matters" related to the relationship between Robert Glassman and TPL—regardless of the point in time or the lack of nexus between Mr. Glassman and the Kunelius Property (Request 2);

- All "matters" related to the relationship between Wainwright and TPL—regardless of the point in time, the division of Wainwright, or the office of TPL (Request 3);

- All documents related to all lines of credit for TPL from October 2002 to the present—regardless of the applicability of the potential line of credit or the office or project of TPL to whom the line of credit applies (Request 4);

- All "matters relating to the status of TPL's account(s) in Wainwright Bank" including quarterly statements—regardless of the type of account or the TPL office that holds the account (Request 5);

- All "matters" related to any default of TPL under the terms of "any" default of TPL under the terms of "any" lines of credit or other loans provided by Wainwright to TPL—regardless of the availability or applicability of the line of credit or loan, or the office of TPL involved in the loan (Request 6);

- All "matters" related to the lines of credits or loans "in which Wainwright Bank disclosed or should have disclosed to state or federal banking authorities that said line or lines of credits or other loans were 'insider loans' as defined in federal and state banking law"—regardless of the applicability of the loan and the relevance of any disclosure by Wainwright to the issues in this litigation (Request 7);

- All documents related to any amounts withdrawn by TPL from any line of credit or loan and the dates thereon—regardless of the applicability of the loan, the point in time, or the relevance to this litigation (Request 8).

---

Honorary Regional Advisory to TPL – an honorary position that requires no participation by Mr. Glassman and holds no decision-making authority.

5

*See* Exhibits A and B. This is not a matter in which the requests cover topics that are at least tenuously connected to the issues in the litigation – here, they are entirely unrelated, overbroad in scope and time, burdensome, harassing, and are not propounded in good faith in pursuit of legitimate discovery needs.

### Argument[4]

As this Court has recognized, non-parties enjoy special protection from harassing or burdensome discovery requests. *See Liberty Mut. Ins. Co. v. Diamante*, 194 F.R.D. 20, 22 (D. Mass. 2000); *see also Bio-Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D. Mass. 1991) ("The case law provides nonparties . . . significant protection from the type of intrusive discovery petitioners request here."); *Blount Int'l, Ltd. v. Schuykill Energy Resources, Inc.*, 124 F.R.D. 523, 526 (D. Mass. 1989) ("[T]he 'necessary' restriction [on discovery] may be broader when a nonparty is the target of discovery.") (quoting *Dart Industries Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)).

Under Fed. R. Civ. P. 26(b)(1), the scope of permissible discovery is limited to "any matter . . . that is relevant to the claim or defense of any party." Kunelius' overbroad discovery requests to Wainwright far exceed the narrow confines of this lawsuit – which boil down to the question of damages following a failure to perform on a P&S that contained a liquidated damages clause. The questions in this lawsuit concern the enforceability of that liquidated damages clause and do not extend to far-fetched theories based on supposed "insider loan"

---

[4] As an initial matter, TPL has standing to challenge the subpoena because TPL "claims a personal right or privilege with regard to the documents sought." 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2457 (1971). TPL has a privacy interest in protecting records concerning its accounts, lines of credits, and loans from a bank, especially where, as here, the request extends to include loan applications, account balances, and defaults. *See, e.g., In re Grand Jury Proceedings*, 814 F.2d 61, 66 (1st Cir. 1987) (stating that the existence of a privileged relationship or of a legitimate property or privacy interest in the documents possessed by the third party" is sufficient to establish standing). Furthermore, it is TPL's understanding that Wainwright Bank intends to object to the document subpoena and notice of deposition.

disclosures that have no bearing on this lawsuit and that Kunelius has no standing to pursue.[5] Kunelius' subpoena is the prototypical fishing expedition.

Rule 45 provides that the Court "shall" quash a subpoena where it "subjects a person to an undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). In this case, any burden to locate documents and provide testimony that is wholly unrelated to the issues in the litigation is by definition an undue burden. *See, e.g., Compaq Computer Corp. v. Packard Bell Electronics*, 163 F.R.D. 329, 335-36 (N.D. Ca. 1995) (holding that where a subpoena's "sought-after documents are not relevant nor calculated to lead to the discovery of admissible evidence, then any burden whatsoever imposed . . . would be by any definition 'undue.'"); *see also United States v. Labovitz*, No. CR 95-30011, 1997 WL 289732, at *1 (D. Mass. May 30, 1997) (quashing subpoenas that "were improper and overbroad as drafted"). To obtain discovery from a non-party, the requesting party "must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *Bio-Vita*, 138 F.R.D. at 17. Here, Kunelius has demonstrated *no* need for the overbroad and irrelevant discovery she seeks. As demonstrated above, Kunelius' subpoena and deposition notice seek testimony and documents far beyond what would be reasonable from a party to this lawsuit, much less a non-party such as Wainwright. Kunelius is seeking detailed information concerning *all* dealings *ever* conducted between Wainwright and TPL however unrelated to the claims and defenses in this lawsuit. It is unreasonable for Kunelius to impose on Wainwright the burden and expense of searching for and producing such a broad array of irrelevant documents and testimony. Kunelius' unwarranted attempt to impose

---

[5] Nor can Kunelius argue that the discovery sought from Wainwright bears any relevance to her claim of a constructive taking under 42 U.S.C. §§ 1983, 1988 (Count VI of the Complaint). The availability of a line of credit does not bear on the question of whether TPL, a private entity, was a "state actor" or whether Kunelius was deprived of her property, which she still owns. *See Marietta Realty, Inc. v. Springfield Redevelopment Auth.*, 902 F. Supp. 310, 312-13 (D. Mass. 1995) (dismissing a constructive taking claim even where the defendant failed to follow through on public announcements regarding the property at issue).

on Wainwright a far larger burden than is justified by the scope of this lawsuit should be rejected.[6]

## Conclusion

Because Kunelius' subpoena and notice of deposition to Wainwright are profoundly overbroad and irrelevant to this litigation, TPL respectfully requests that this Court quash both the subpoena and notice of deposition to Wainwright, and grant such other relief as the Court deems just and proper.

## Request for Oral Argument

TPL believes that oral argument may assist the Court and requests that the Court grant a hearing on this Motion pursuant to Local Rule 7.1(D).

Respectfully submitted,

THE TRUST FOR PUBLIC LAND

By its attorneys,

/s/ Dahlia S. Fetouh_____
Richard A. Oetheimer (BBO # 377665)
Dahlia S. Fetouh (BBO # 651196)
Goodwin Procter LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Dated: February 28, 2007

---

[6] In addition to the arguments raised above, the document subpoena and notice of deposition to Wainwright Bank are procedurally defective. Rule 45(a)(1)(D) of the Federal Rules of Civil Procedure requires that "[e]very subpoena shall . . . set forth the text of subdivisions (c) and (d) of this rule." Fed. R. Civ. P. 45(a)(1)(D). Subdivisions (c) and (d) of Rule 45 set forth both the provisions concerning the "Protection of Persons Subject to Subpoenas" and the "Duties in Responding to Subpoenas." Neither the subpoena nor the notice of deposition served upon Wainwright Bank contain the text of either of these subdivisions. However, even if properly served, the subpoena and notice of deposition should be quashed for the reasons set forth above.

## CERTIFICATION UNDER LOCAL RULE 7.1 AND LOCAL RULE 37.1

I, Dahlia S. Fetouh, hereby certify that counsel for The Trust for Public Land conferred with Michael McLaughlin, counsel for Plaintiff, on February 26, 2007 at 6:00 p.m. in the offices of plaintiffs' counsel for approximately ten to fifteen minutes in a good faith attempt to resolve or narrow the issues in this motion prior to its filing. The parties were unable to reach any agreement on the issues in this motion and memorandum of law.

                                           /s/ Dahlia S. Fetouh_____
                                           Dahlia S. Fetouh

## CERTIFICATE OF SERVICE

I, Dahlia S. Fetouh, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 28, 2007.

                                           /s/ Dahlia S. Fetouh_____
                                           Dahlia S. Fetouh

LIBA/1766070.2

# EXHIBIT A

UNITED STATES DISTRICT COURT
(DISTRICT OF MASSACHUSETTS)

CIVIL ACTION NO. 05-11697 GAO

| | |
|---|---|
| MARILYN KUNELIUS, | ) |
| Plaintiff, | ) |
| v. | ) |
| TOWN OF STOW separately, A PARTNERSHIP OF UNKNOWN NAME BETWEEN TOWN OF STOW and THE TRUST FOR PUBLIC LAND, THE TRUST FOR PUBLIC LAND separately and CRAIG A. MACDONNELL, in his individual capacity, | ) |
| Defendants. | ) |

COPY

## SUBPOENA DUCES TECUM

TO:  Keeper of the Records for Wainwright Bank
     63 Franklin Street
     Boston, MA 02110

***GREETINGS:***

**YOU ARE HEREBY COMMANDED** in accordance with the applicable provisions of the Fed. R. Civ. P. 30 and 45 to appear and to testify, before a Notary Public of the Commonwealth, on **Thursday, March 15, 2007, at 10:00 a.m.** at the offices of Law Offices of Michael C. McLaughlin, One Beacon Street, 33rd Floor, Boston, Massachusetts, on March 15, 2007, at 10:00 a.m. and from day to day thereafter, and to testify at the taking of the deposition in the above-entitled action.

1

**YOU ARE FURTHER REQUIRED** to bring with you the documents referred to in Schedule A attached hereto.

HEREOF FAIL NOT as you will answer your default under the pains and penalties in the law that on behalf are made and provided.

Dated at Boston, Suffolk County, Massachusetts on the 15th day of February, 2007.

_Lucie DeBellis_
*Notary Public*
*My Commission Expires:* October 12, 2012

LUCIE DeBELLIS
Notary Public
Commonwealth of Massachusetts
My Commission Expires
October 12, 2012

Marilyn Kunelius

By her Attorney,

Dated: February 15, 2007

_Michael McLaughlin_
Michael C. McLaughlin (BBO# 337350)
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
Tel. (617) 227-2275

2

## SCHEDULE A

1. Any and all applications of the Trust of Public Land ("TPL") for a line of credit with Wainwright Bank.

2. All matters related to relationship between Robert Glassman and TPL.

3. All matters related to relationship between Wainwright Bank and TPL.

4. Any and all documents related to a line of credit or lines of credits for TPL in the period from October 1, 2002, to present.

5. All matters relating to status of TPL's account(s) in Wainwright Bank including amount(s) of such account(s) on quarterly basis from October 1, 2002, through December 31, 2003.

6. All matters related to any and all default or defaults of TPL under the terms of any and all line or lines of credit and/or other loans provided by the Wainwright Bank to TPL.

7. All matters related to said line or lines of credit of TPL and any other loans to TPL in which Wainwright Bank disclosed or should have disclosed to state or federal banking authorities that said line or lines of credits or other loans were "insider loans" as defined in federal and state banking law.

8. Any and all documents related to any and all amounts withdrawn by TPL from any line or lines of credit or any other loan(s) and the dates thereon.

# EXHIBIT B

UNITED STATES DISTRICT COURT
(DISTRICT OF MASSACHUSETTS)

CIVIL ACTION NO. 05-11697 GAO

|  |  |
|---|---|
| MARILYN KUNELIUS, | ) |
| Plaintiff, | ) |
| v. | ) |
| TOWN OF STOW separately, A PARTNERSHIP OF UNKNOWN NAME BETWEEN TOWN OF STOW and THE TRUST FOR PUBLIC LAND, THE TRUST FOR PUBLIC LAND separately and CRAIG A. MACDONNELL, in his individual capacity, | ) |
| Defendants. | ) |

## NOTICE OF DEPOSITION

TO: Keeper of Records for Wainwright Bank
63 Franklin Street
Boston, MA 02110

**PLEASE TAKE NOTICE** that at 10:00 a.m. on Thursday, March 15, 2007, at the offices of Law Offices of Michael C. McLaughlin, One Beacon Street, 33rd Floor, Boston, Massachusetts, the Plaintiff, pursuant to Fed. R. Civ. P. 30 and 45, will take deposition upon oral examination of the **Keeper of the Records for Wainwright Bank**. A true and accurate copy of the schedule designating the materials to be produced by the deponent is attached hereto as Schedule A. The examination shall be taken before an

1

officer authorized by law to administer oaths, and will continue from day to day until completed.

You are invited to attend and cross-examine.

Marilyn Kunelius

By her Attorney,

Dated: February 15, 2007

Michael C. McLaughlin (BBO# 337350)
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
Tel. (617) 227-2275

**CERTIFICATE OF SERVICE**

I, Michael C. McLaughlin, do hereby certify that, on January 15, 2007, I caused a true copy of the above document to be served by mail upon the attorney of record for the defendants.

Michael C. McLaughlin

## SCHEDULE A

1. Any and all applications of the Trust of Public Land ("TPL") for a line of credit with Wainwright Bank.

2. All matters related to relationship between Robert Glassman and TPL.

3. All matters related to relationship between Wainwright Bank and TPL.

4. Any and all documents related to a line of credit or lines of credits for TPL in the period from October 1, 2002, to present.

5. All matters relating to status of TPL's account(s) in Wainwright Bank including amount(s) of such account(s) on quarterly basis from October 1, 2002, through December 31, 2003.

6. All matters related to any and all default or defaults of TPL under the terms of any and all line or lines of credit and/or other loans provided by the Wainwright Bank to TPL.

7. All matters related to said line or lines of credit of TPL and any other loans to TPL in which Wainwright Bank disclosed or should have disclosed to state or federal banking authorities that said line or lines of credits or other loans were "insider loans" as defined in federal and state banking law.

8. Any and all documents related to any and all amounts withdrawn by TPL from any line or lines of credit or any other loan(s) and the dates thereon.