**Michael F. Hill, CPA**
**25 Orchard Lane**
**Wayland, MA 01778-1907**
**(508) 361-6738**
**michaelfhillcpa@comcast.net**

May 14, 2007

Expert Report

I have reviewed the P&S Agreement between Mrs. Marilyn Kunelius and Cohousing Resources, LLC, dated October, 2002, for the sale of the land of approximately 8.57 acres for the amount $ 1,116,900. The P&S Agreement is attached hereto as Exhibit A. A component of the P&S Agreement that I review provided that if the sale took place with Cohousing Resources, LLC, and Mrs. Kunelius, Mrs. Kunelius would convey to the Town of Stow approximately 42.1 acres.

It is my understanding that the gift component of the transaction anticipated that the property in giving to the Town of Stow had significant value based upon its unspoiled nature and the fact that currently it contains a substantial aquifer.

I am informed that Mrs. Kunelius has long sought, upon the sale of her property, donate said 42.1 acres to the Town of Stow as a lasting legacy of her many decades as the residence of the Town of Stow.

I am informed that Mrs. Kunelius had little or no income at the time she signed the P&S Agreement. I am informed that she has had no or little income from the date of the P&S Agreement to date.

I have reviewed an appraisal of her property consisting of 50.67 acres where said appraisal was undertaken by Geosphere Environmental Management, Inc., 51 Portsmouth Avenue, Exeter, New Hampshire 03833, which I have attached hereto as Exhibit B. Exhibit B indicates that the property has approximately value of $17 million with a Net Present Value of $4.3M.

Mrs. Kunelius' property, should it be sold (8.57 acres), normally would have capital gain of $221,000. This is based upon the fact that she acquired the property 24 years ago.

It is my opinion that Mrs. Kunelius would pay capital gains of $138,955.00 on her sale of her property to Cohousing Resources, LLC, because a portion of the capital gain would be off set by the charitable deduction she would receive from the gift of 42.1 acres to the Town of Stow, as provided for in Section 170(c) of the Internal Revenue Code.

The charitable deduction would also include a carry forward component which can be used by Mrs. Kunelius for the next 5 year or until the carry forward is exhausted. I

cannot calculate the exact amount of taxes that she would be able to offset because I do not have enough information to project her future income.

_____
Michael F. Hill, CPA

**STANDARD FORM
PURCHASE AND SALE AGREEMENT**

From the Office of:
Atty. Peter A. Kachajian, Jr.
292 Main Street
Northborough, MA 01532
(508) 393-6278

1. **PARTIES**
   *(fill in)*

   This _____ day of __October,___ 2002
   **Marilyn Kunelius of 142 and 144 Red Acres Road, Stow, MA**
   hereinafter called the SELLER, agrees to SELL and

   **Cohousing Resources, LLC, with an address of 9813 NE Murden Cove Road, Brainbridge Islande, WA 98110**
   hereinafter called the BUYER or PURCHASER, agrees to BUY, upon the terms hereinafter set forth, the following described premises: **142 and 144 Red Acres Road, Stow, MA**

2. **DESCRIPTION**
   *(fill in and include title reference)*

   The land with the buildings and improvements thereon known and located at **142 and 144 Red Acres Road, Stow, MA**. Being more particularly described in the Middlesex Registry of Deeds Book 15412; Page 316; Book 26230; Page 255 (see exhibits).

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**

   *(fill in or delete)*

   Included in the sale as a part of said premises are 50.67 acres of land with a home, caretakers residence, barn and the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, ONLY IF BUILT IN, refrigerators, dishwashers, washing machines and dryers; and all buildings and improvements thereon are sold in "as is" condition.

4. **TITLE DEED**
   *(fill in)*
   *Include here by specific reference any restrictions, easements, rights and obligations in party walls not included in (b), leases, municipal and other liens, other encumbrances, and make provision to protect SELLER against BUYER'S breach of SELLER'S covenants in leases, where necessary.*

   Said premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven (7) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Such taxes for the then current taxable year are not due and payable on the date of the delivery of such deed;
   (c) Any liens for municipal betterments assessed after the date of this agreement;
   (d) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises
   (e)

5. **PLANS**

   If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**

   In addition to the forgoing, if the title to said premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

COPYRIGHT © 1979, 1984, 1986, 1987, 1988, 1991
GREATER BOSTON REAL ESTATE BOARD
Rev 1999          Form No RA151

All rights reserved. This form may not be copied or reproduced in whole or in part in any manner whatsoever without the prior express written consent of the Greater Boston Real Estate Board.          CWV 5.0

| | | |
|---|---|---|
| 7. | PURCHASE PRICE *(fill in): space is allowed to write out the amounts if desired* | The agreed purchase price for said premises is $1,116,900.00 ONE MILLION ONE HUNDRED SIXTEEN THOUSAND NINE HUNDRED and 00/100s.......dollars, of which |

$       0.00        have been paid as a deposit this day and
$       0.00        have been paid at the time of the offer to purchase
$ 716,900.00    (less deposits paid) are to be paid at the time of delivery of the deed cash, or by certified cashier's, treasurer's or bank check, or conveyancing attorney's check.**
$ 400,000.00    **promissory note secured by a mortgage***

$ $1,116,900.00    TOTAL

\*\* See Paragraph #31 for further terms and provisions
\* See paragraph #30 for further terms and provisions

8. **TIME FOR PERFORMANCE; DELIVERY OF DEED** *(fill in)*

Such deed is to be delivered at 1:00 o'clock P.M. on or before the 26th day of September, 2003, at the Office of the Conveyancing Attorney unless otherwise agreed upon in writing provided notice of same is given to Buyer's and Seller's counsel. However, provided the Chap. 40B approval process is proceeding forward, BUYER may have. up to 12 months extension It is agreed that time is of the essence of this agreement.

9. **POSSESSION and CONDITIONS of PREMISES.** *(attach a list of exceptions, if any)*

Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they now are, reasonable use and wear thereof excepted and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof. The BUYER shall be entitled to an inspection of said premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. **EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM** *(Change period of time if desired.)*

If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of delivery of the deed the premises do no conform with the provisions hereof, the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the time for performance hereof shall be extended for a period of thirty (30) days.*
\* Contemplated herein is the Town of Stow exercising its right of first refusal pursuant to M.G.L c. 61.

11. **FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.**

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

12. **BUYER'S ELECTION TO ACCEPT TITLE**

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefor the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either
   (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or
   (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

| | | |
|---|---|---|
| 13. | ACCEPTANCE OF DEED | The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded in a manner consistent with customary conveyancing practices. |
| 15. | INSURANCE *Insert amount (list additional types of insurance and amounts as agreed)* | Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows: <br> *Type of Insurance*   *Amount of Coverage* <br> (a) Fire   Risk to remain with SELLER <br> (b) Extended Coverage   As is presently insured <br> (c) |
| 16. | ADJUSTMENTS *(list operating expenses, if any, or attach schedule)* | Water and sewer use charges and taxes for the then current year shall be apportioned and fuel value shall be adjusted as of the day of performance of this agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. |
| 17. | ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of the abatement, less the reasonable cost of obtaining the same, shall apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
| 18. | BROKER'S FEE *(fill in fee with dollar amount or percentage; also name of Broker(s))* | A broker's fee for professional service per listing agreement is due from the SELLER to **Century 21 Classic Properties**, the broker herein, but only if, as when the SELLER receives the full purchase price pursuant to this Agreement and the BUYER accepts and records the SELLER'S deed and not otherwise. |
| 19. | BROKER(S) WARRANTY *(fill in name)* | The Broker(s) named herein **Century 21 Classic Properties** warrant(s) that the Broker(s) is(are) duly licensed as such by the Commonwealth of Massachusetts. |
| 20. | DEPOSIT *(fill in, or delete reference to broker(s) if SELLER holds deposit)* | All deposits made hereunder shall be held by **Law Offices of Peter A. Kachajian, Jr.** subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement, provided however that in the event of any disagreement the escrow agent may retain said deposits pending instructions mutually given by the SELLER and BUYER or a court of competent jurisdiction, **except as herein provided in Paragraph #31.** |
| 21. | BUYER'S DEFAULT; DAMAGES | If the BUYER shall fail to fulfill the BUYER'S agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall constitute SELLER'S sole remedy in equity and law. |
| 22. | RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises. |
| 23. | BROKER AS PARTY | The Broker(s) named herein join(s) in this agreement and becomes a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s), and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing. |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |

| | | |
|---|---|---|
| 25. | WARRANTIES AND REPRESENTATIONS *(fill in); if none, state "none", if any listed, indicate by whom each warranty or representation was made* | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): |
| 26. | MORTGAGE CONTINGENCY CLAUSE | In order to help finance the acquisition of said premises, the parties agree that the BUYER shall apply for a conventional bank or other institutional construction loan of **80% of the project construction price, at prevailing rates, terms and conditions.** |
| 27. | CONSTRUCTION OF AGREEMENT | This instrument, executed in quadruplicate counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER, their obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it. |
| 28. | LEAD PAINT LAW | The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. | SMOKE DETECTORS | The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located stating that said premises have been equipped with approved smoke detectors in conformity with applicable law.<br>The initialed riders, if any, attached hereto, are incorporated herein by reference. |
| 30. | PURCHASE PRICE FINANCING | **The $400,000.00 promissory note secured by a mortgage against the land, subordinated only to a comprehensive construction loan in the amount of 80% of project construction costs. Promissory note shall bear interest at 7% APR and shall become due and payable 24 months after closing, or within 30 days after substantial completion of the project construction. BUYER shall make interest payments to SELLER of $2,333.00 per month until principal is paid in full. All payments to be made in cash or certified funds.**<br><br>Security for the $400,000.00 promissory note, aforescribed, shall be in the form of a mortgage on the 8.57 acre parcel. Upon BUYER obtaining construction financing, SELLER shall subordinate said mortgage to the construction lender. All purchase and sale agreements (pre-sale or otherwise) executed by potential purchasers of the BUYER'S contemplated co-housing project shall be assigned to the SELLER as further security concomitant with each purchase and sale agreement subjecting the purchaser, unequivocally, to personal liability as to the $400,000.00 promissory note.<br><br>Nothwithstanding the foregoing, BUYER shall only encumber the 8.57 acre parcel expected to be developed (consisting of .93 acre house parcel and 7.64 acre horse farm parcel). |
| 31. | EARNEST MONEY | Seller acknowledges receipt from Buyer of an initial earnest money deposit in the sum of $10,000 * in the form of a Promissory Note to be held by Seller pending the completion of Feasibility. Buyer shall convert the Promissory Note to non-refundable cash at completion of the feasibility period when the Buyer has removed this contingency. Buyer will make additional non-refundable earnest money payments of $1500 per month beginning 60 days after removal of the Feasibility Contingency and until closing. It is agreed that earnest money payments shall be immediately available for use by the Seller and no payments shall be held in escrow. All earnest money payments will be applied to the purchase price at the closing.<br>* See exhibit A attached hereto and made a part hereof |

| | | |
|---|---|---|
| 32 | 40B APPLICATION & TRANSFER OF LAND | The Buyer and Seller agree to cooperate in the timely submission of a 40B application for the development of a 30 unit owner occupied, tightly clustered, environmentally sensitive residential housing project, with 25% of the units qualifying as affordable under the guidelines for such an application. Said application shall be made within 135 days of the date of this Agreement. It is agreed that the 40B application process will be as cooperative and friendly as possible to the Town of Stow, with all mutually beneficial environmental agendas addressed as openly and clearly as possible. |
| 33. | RISK OF LOSS OR ENVIRONMENTAL DAMAGE | Seller, at its sole cost and responsibility, shall keep the Premises safe and secure from environmental damage until the closing. Seller shall bear the risk of all damage to the Premises from all causes until the closing. Should there be any intentional or unintentional environmental damage that is not restored by Seller to its former condition by the closing, Buyer, at its option, may (i) terminate this Agreement and any deposit shall be refunded to Buyer, plus all costs incurred by buyer for feasibility, engineering and design, or (ii) purchase the Premises and be entitled to a reduction in the purchase price which is sufficient to cover the cost of the repairing any such damage. |
| 34. | INSPECTIONS AND TESTING | The obligations of Buyer under this Agreement are expressly subject to Buyer conducting engineering inspections and testing of the property during feasibility. If any such inspections reveal conditions unacceptable to Buyer during the feasibility period, Buyer may terminate this Agreement and any deposit will be refunded to Buyer. After completion of the feasibility period, Buyer shall have the right to reasonable tours, inspections and testing for the purposes of planning, design and marketing of the project, with 24 hour notice to Seller. Buyer agrees to conduct such a feasibility evaluation with all due diligence. If Buyer is unable to determine that the site is feasible for their purposes within 60 days of the date of this agreement, Buyer shall inform Seller in writing by such date and this Agreement will terminate and the earnest money deposit will be refunded to Buyer. |
| 35. | ADDITIONAL PROVISIONS | Upon the Town of Stow's approval of the development of the said 8.57 acre parcel, by the BUYER, and issuance of all requisite Board Approvals, building permits and SELLER receiving purchase monies as set forth herein,, BUYER and SELLER agree that SELLER shall, upon acceptance of the Town of Stow, transfer all right, title and interest in the said 42.1 acre parcel currently under M.G.L. c. 61, as a charitable contribution.<br><br>In the event that the Town of Stow exercises its right of first refusal pursuant to M.G.L. c. 61, all monies deposited hereunder shall be forthwith returned to BUYER without further recourse by either party in equity or law. |

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

_/s/ Marilyn Kunelius_
SELLER    Marilyn Kunelius

_/s/ Chris ScottHanson_
BUYER    Chris ScottHanson
Representative for Cohousing Resources, LLC

# Promissory Note

In connection with the Agreement to Purchase
50.67 Acre Horse Property owned by Marilyn Kunelius

October 11, 2002

$10,000.00

For value received and as a deposit made in conjunction with the offer to purchase real estate of today's date, I promise to pay Marilyn Kunelius, the sum of Ten Thousand and no/100ths Dollars ($10,000) on or before December 10, 2002.

This note shall become void if the purchaser chooses to terminate the purchase and sale agreement during the feasibility period terminating 60 days after the signing of the Purchase and Sale agreement. If feasibility is approved by the purchaser, this note shall be converted to cash at the end of the feasibility period, as stipulated in the purchase and sale agreement attached hereto.

If this note becomes in default, borrower agrees to pay all reasonable collection costs and attorney's fees.

Agreed this 11th day of October, 2002

Chris ScottHanson, Owner
for Cohousing Resources LLC
9813 NE Murden Cove Rd.
Bainbridge Island, WA 98110

(206)842-9160

BK 15412 PG316

JOHN A. BUBNOWICZ of Maynard, Middlesex County, Massachusetts, and MARILYN E. KUNELIUS, formerly Marilyn E. Bubnowicz, of Stow, Middlesex County, Massachusetts, Husband and Wife as tenants by the entirety,

in consideration of ONE ($1.00) DOLLAR and other valuable consideration

grant to MARILYN E. KUNELIUS

of 142 Red Acre Road, Stow, Massachusetts

with quitclaim covenants

A certain parcel of land with the buildings thereon on the Northwesterly side of Red Acre Road in Stow, Middlesex County, Massachusetts and being shown as Lot 1 on a plan entitled, "Plan of Land Stow, Mass. owned by Charles H. Lord et al dated January 30, 1976, survey by Clyde R. Wheeler, Inc., Bolton, Mass.", recorded at Book 12959 End, and bounded and described as follows:

| | |
|---|---|
| SOUTHEASTERLY | by land of Bubnowicz and land of Frederickson, as shown on said plan, three hundred and twenty-five (325.00) feet; |
| SOUTHEASTERLY | by land of Magurn, as shown on said plan, one hundred sixty-two (162.00) feet; |
| SOUTHWESTERLY | by land of Brown, as shown on said plan, two hundred twelve and 56/100 (212.56) feet; |
| NORTHWESTERLY | by land of Red Acre Farm Inc., as shown on said plan, two hundred eighty and 92/100 (280.92) feet; |
| NORTHWESTERLY | by land of Red Acre Farm Inc., as shown on said plan, four hundred and sixteen (416.00) feet; |
| SOUTHWESTERLY | by land of Red Acre Farm Inc., as shown on said plan, six hundred and fifteen (615.00) feet; |
| SOUTHWESTERLY | by land of Red Acre Farm Inc., as shown on said plan, four hundred and eighty-five (485.00) feet; |
| NORTHWESTERLY | by land of Red Acre Farm Inc., as shown on said plan, seven hundred fifty-one and 15/100 (751.15) feet; |
| NORTHWESTERLY | by land of Freeman, McClellan and Quinn, as shown on said plan, three hundred thirty-seven and 12/100 (337.12) feet; |
| NORTHWESTERLY | by land of Quinn, Herrick and Duncanson, as shown on said plan, one hundred ninety-two and 77/100 (192.77) feet; |
| NORTHWESTERLY | by land of Duncanson and May, as shown on said plan, one hundred ninety-three and 01/100 (193.01) feet; |
| NORTHWESTERLY | by land of May, as shown on said plan, fifty-one and 12/100 (51.12) feet; |
| NORTHWESTERLY | by land of May and Henry, as shown on said plan, one hundred forty-seven and 86/100 (147.86) feet; |
| NORTHWESTERLY | by land of Henry, as shown on said plan, fifty-one and 25/100 (51.25) feet; |
| NORTHEASTERLY | by land of Babrikki, as shown on said plan, eight hundred forty-nine and 29/100 (849.29) feet; |
| NORTHWESTERLY | by land of Babrikki, as shown on said plan, one hundred three and 09/100 (103.09) feet; |
| NORTHEASTERLY | by land of Babrikki, as shown on said plan, one hundred twenty-six and 19/100 (126.19) feet; |
| NORTHEASTERLY | by land of Babrikki, as shown on said plan, two hundred ninety-three and 47/100 (293.47) feet; |

Property Address: Lot 1 and Lot 2, Red Acre Road Stow, Massachusetts

BK 15412 Pg 311

| | |
|---|---|
| NORTHWESTERLY | by land of Babrikki, as shown on said plan, three hundred two and 41/100 (302.41) feet; |
| NORTHWESTERLY | by land of Babrikki, as shown on said plan, two hundred thirty-eight and 78/100 (238.78) feet; |
| NORTHEASTERLY | by Tuttle Lane, as shown on said plan, eighty-six and 75/100 (86.75) feet; |
| NORTHEASTERLY | by Tuttle Lane, as shown on said plan, three hundred and ten (310.00) feet; |
| NORTHEASTERLY | by Tuttle Lane, as shown on said plan, seventy-six and 47/100 (76.47) feet; |
| NORTHEASTERLY | by Tuttle Lane, as shown on said plan, one hundred twenty-one and 65/100 (121.65) feet; |
| SOUTHEASTERLY | by land of Weinman, as shown on said plan, two hundred thirty-six and 85/100 (236.85) feet; |
| SOUTHEASTERLY | by land of Ostrowski, as shown on said plan, two hundred twenty-five and 25/100 (225.25) feet; |
| SOUTHEASTERLY | by land of John J. & Kathy B. Palmaccio, Ianatta, McLean, Taylor, Wendell, and Barry A. & Sharyn L. Palmaccio, as shown on said plan, eight hundred ninety-six and 10/100 (896.10) feet; |
| NORTHEASTERLY | by land of Barry A. & Sharyn L. Palmaccio, as shown on said plan, two hundred and seventy (270.00) feet; |
| SOUTHEASTERLY | by Red Acre Road, as shown on said plan, thirty-eight and 90/100 (38.90) feet; and |
| SOUTHWESTERLY | by land of Bubnowicz, as shown on said plan, two hundred and seventy (270.00) feet to the point of beginning. |

Containing 49.75 acres more or less as shown on said plan, and hereby conveying Lot 1 as shown on said plan, however otherwise bounded, measured or described.

Also a certain parcel of land, with the buildings thereon, on the Easterly side of Tuttle Lane and being shown as Lot 2 on said plan entitled, "Plan of Land, Stow, Mass. owned by Charles H. Lord et al, Scale 1" = 100', January 30, 1976, Survey by Clyde R. Wheeler Inc., Bolton, Mass. recorded at Book 12959 End, and bounded and described as follows:

| | |
|---|---|
| NORTHEASTERLY | by land of Morey, as shown on said plan, one hundred and twenty-seven (127.00) feet; |
| NORTHEASTERLY | by land of Weinman, as shown on said plan, one hundred nineteen and 69/100 (119.69) feet; |
| SOUTHEASTERLY | by land of Andrews, as shown on said plan, one hundred thirty and 89/100 (130.89) feet; and |
| SOUTHWESTERLY | by Tuttle Lane, as shown on said plan, one hundred seventy-five and 06/100 (175.06) feet to the point of beginning. |

Containing 18,134 square feet more or less and hereby conveying Lot 2 as shown on said plan however otherwise bounded, measured or described.

Being the same premises conveyed to us by deed of Charles H. Lord, Donald L. Priest, Executor of the Estate of Evelyn L. Priest, Eleanor N. Derby and Mary Elizabeth davis dated April 8, 1976 and recorded with the Middlesex South District Registry of Deeds in Book 12959, Page 626.

Executed as a sealed instrument this ~~October~~ 8th day of November 19 83

*John A. Bubnowicz*
JOHN A. BUBNOWICZ
*Marilyn Kunelius*
MARILYN E. KUNELIUS formerly
Marilyn E. Bubnowicz

### The Commonwealth of Massachusetts

Middlesex ss.   ~~October~~ November 8, 19 83

Then personally appeared the above named John A. Bubnowicz and acknowledged the foregoing instrument to be his free act and deed,

Before me, _____
Notary Public — ~~Justice of the Peace~~
My commission expires Nov 16, 1984

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.   ~~October~~ November 8, 1983

Then personally appeared the above named Marilyn E. Kunelius and acknowledged the foregoing instrument to be her free act and deed,

Before me, _____
Notary Public
My commission expires: 9/28/90

32. **40B APPLICATION & TRANSFER OF LAND**

The Buyer and Seller agree to cooperate in the timely submission of a 40B application for the development of a 30 unit owner occupied, tightly clustered, environmentally sensitive residential housing project, with 25% of the units qualifying as affordable under the guidelines for such an application. Said application shall be made within 135 days of the date of this Agreement. It is agreed that the 40B application process will be as cooperative and friendly as possible to the Town of Stow, with all mutually beneficial environmental agendas addressed as openly and clearly as possible.

33. **RISK OF LOSS OR ENVIRONMENTAL DAMAGE**

Seller, at its sole cost and responsibility, shall keep the Premises safe and secure from environmental damage until the closing. Seller shall bear the risk of all damage to the Premises from all causes until the closing. Should there be any intentional or unintentional environmental damage that is not restored by Seller to its former condition by the closing, Buyer, at its option, may (i) terminate this Agreement and any deposit shall be refunded to Buyer, plus all costs incurred by buyer for feasibility, engineering and design, or (ii) purchase the Premises and be entitled to a reduction in the purchase price which is sufficient to cover the cost of the repairing any such damage.

34. **INSPECTIONS AND TESTING**

The obligations of Buyer under this Agreement are expressly subject to Buyer conducting engineering inspections and testing of the property during feasibility. If any such inspections reveal conditions unacceptable to Buyer during the feasibility period, Buyer may terminate this Agreement and any deposit will be refunded to Buyer. After completion of the feasibility period, Buyer shall have the right to reasonable tours, inspections and testing for the purposes of planning, design and marketing of the project, with 24 hour notice to Seller. Buyer agrees to conduct such a feasibility evaluation with all due diligence. If Buyer is unable to determine that the site is feasible for their purposes within 60 days of the date of this agreement, Buyer shall inform Seller in writing by such date and this Agreement will terminate and the earnest money deposit will be refunded to Buyer.

35. **ADDITIONAL PROVISIONS**

Upon the Town of Stow's approval of the development of the said 8.57 acre parcel, by the BUYER, and issuance of all requisite Board Approvals, building permits and SELLER receiving purchase monies as set forth herein,, BUYER and SELLER agree that SELLER shall, upon acceptance of the Town of Stow, transfer all right, title and interest in the said 42.1 acre parcel currently under M.G.L. c. 61, as a charitable contribution.

In the event that the Town of Stow exercises its right of first refusal pursuant to M.G.L. c. 61, all monies deposited hereunder shall be forthwith returned to BUYER without further recourse by either party in equity or law.

NOTICE: This is a legal document that creates binding obligations. If not understood, consult an attorney.

_Marilyn Kunelius_
SELLER   Marilyn Kunelius

_Chris ScottHanson_
BUYER   Chris ScottHanson
Representative for Cohousing Resources, LLC

**Michael F. Hill, CPA**
25 Orchard Lane
Wayland, MA 01778-1907
(508) 361-6738
michaelfhillcpa@comcast.net

*Education*

**Bentley College**                                                                                              Waltham, MA
B.S. in accounting, 1977

*Professional Designation*

CPA, 1981. Since that time, I have met all continuing education requirements in order to maintain my CPA status

*Employment History*

**Staff accountant and field auditor**                                                              1977-1979
New England Mutual Life Insurance Co.                                                              Boston, MA
Performing audits of companies and agencies affiliated with New England Mutual Life Insurance Co.

**Staff accountant**                                                                                                 1979-1982
Charles DiPesa & Company, CPA                                                                        Boston, MA
Corporate and individual tax and auditing.

**Sole Practitioner**                                                                                              1982 to present
Michael F. Hill CPA , 25 Orchard Lane                                                              Wayland, MA
Taxation, accounting, financial planning, part-time chief financial officer, bankruptcy, income and corporate tax, general accounting, and financial consulting.

*United States Bankruptcy Court Professional Experience*

Hired by Bankruptcy Trustee to conduct to prepare taxes, forensic accounting and in a few cases to provide expert testimony though I don't recall which cases at the present time.

*Practice area*

Bankruptcy, income and corporate tax, part-time chief financial officer, general accounting, and financial consulting.

*Awards and Citations*

Award for passing CPA exam at the first sitting

*Professional Organizations*

Massachusetts Society of CPA
American Institute of CPA

2



# GEOSPHERE
Environmental Management, Inc.

December 4, 2006

Ms. Marilyn Kunelius
635 Stow Road
Stow, Maine 04037

Attorney Michael C. McLaughlin
One Beacon Street, 33rd floor
Boston, Massachusetts 02108

Re:   Letter Report
      Ground Water Resource Evaluation
      Red Acre Road
      Stow, Massachusetts

Dear Ms. Kunelius:

Geosphere Environmental Management, Inc. (GEOSPHERE) is pleased to submit this letter report on our findings regarding the ground water resources on your property at 142 Red Acre Road, Stow, Massachusetts. This letter report has been prepared in accordance with our scope of work and cost estimate dated August 2, 2006.

**BACKGROUND AND PROJECT UNDERSTANDING**

Based on our conversations with you and Attorney Michael McLaughlin, it is GEOSPHERE's understanding that the court requires an evaluation of the ground water resources of your property located at 142 Red Acre Road. This evaluation includes the development of a dollar value for the ground water if it is assumed a potable public ground water supply well, permitted by the Massachusetts Department of Environmental Protection (MA DEP) in accordance with 310 CMR 22.00, is installed on your property.

D.L. Maher, Inc. (Maher), a well drilling contractor, performed a ground water test well exploration program between 1985 and 2000 that included the installation of three 2 ½-inch diameter ground water exploration test wells (identified as Test Well 1-85, Test Well 2-86, and 2-foot observation well), a four-hour aquifer-pumping test on Test Well 1-85 to determine a potential ground water yield, and the collection of a ground water sample from Test Well 1-85 at the end of the four-hour aquifer-pumping test to determine ground water quality. The continuous pumping rate for the aquifer-pumping test was 60 gallons per minute (gpm).

At the end of the four-hour aquifer-pumping test the drawdown in the aquifer was 4.41 feet according to Maher in their letter dated March 25, 1986. This drawdown indicates a specific capacity (i.e. gallons per minute divided by the drawdown) of 13.6 gpm/foot of drawdown (60 gpm/4.41 feet of drawdown) for this well. Maher indicated that "Test Well 1-85 was driven to a depth of 59.5 feet" below ground surface and that "brown fine to coarse sand with gravel was encountered from 15-59.5 feet." A well screen was

---