UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No.: 05-11697GAO

MARILYN KUNELIUS
    Plaintiff,

v.

TOWN OF STOW, separately, A PARTNERSHIP OF UNKNOWN NAME BETWEEN TOWN OF STOW and the TRUST FOR PUBLIC LAND, THE TRUST FOR PUBLIC LAND separately and CRAIG A. MACDONNELL, in his individual capacity
    Defendants

## DEFENDANT TOWN OF STOW'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

The Defendant, the Town of Stow, submits this memorandum of law in support of its motion for summary judgment pursuant to Fed.R.Civ.P 56 and Local Rule 56.1 on the plaintiff's complaint.

## I. Background[1]

The defendant Town of Stow ("Stow" or the "Town") is a Massachusetts municipal corporation. Town's Statement of Facts, ¶ 3. The plaintiff, Marilyn Kunelius, is a former resident of the Town. Id., ¶ 1. She owns property located at 142 and 144 Red Acres Road in Stow (the "Property"). Id., ¶ 2. The plaintiff

---

[1] The facts in this section are drawn from the Statement of Material Undisputed Facts ("Statement of Facts"). As required under summary judgment procedure, such facts must be interpreted in favor of the non-moving party. In so stating undisputed material facts, the defendants do not concede or rely on these facts for any purpose other than this motion for summary judgment.

1

chose to register the Property under M.G.L. c. 61 and was therefore taxed at a lower rate. Id., ¶ 4.

On or about October 11, 2002, the plaintiff entered into a purchase and sale agreement ("P&S") with Cohousing Resources, LLC ("Cohousing") for the sale of the Property. Town's Statement of Facts, ¶ 5. The P&S contained a provision entitled "BUYER'S DEFAULT; DAMAGES" that provided that if "the BUYER shall fail to fulfill the BUYER'S agreements herein, all the deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall constitute SELLER'S sole remedy in equity and law." Id., ¶ 6.

Pursuant to M.G.L. c. 61, the Plaintiff notified the Town of Stow that she intended to sell the property and forwarded a copy of the P&S. Town's Statement of Facts, ¶ 7. This notification initiated the 120-day notice requirement during which the Town could exercise its right of first refusal to purchase the property or assignment its right of first refusal to purchase the property to a non-profit conservation organization. Id.

A group of Stow residents in close proximity, who became known as the Friends of Red Acre, contacted the Trust for Public Land ("TPL") as a potential conservation non-profit organization to whom the Town of Stow could assign its right of first refusal to purchase the property. Town's Statement of Facts, ¶ 8. Craig MacDonnell, of TPL, met with representatives of the Town of Stow and assured the Town and the Plaintiff and her representatives that TPL in the past had always honored an assignment of right of first refusal. Id., ¶ 9. In addition, members of the Board of Selectmen spoke with other municipalities where TPL had done projects, spoke with other conservation groups who reported that TPL had a good reputation and researched TPL through its literature and website.

2

The Board of Selectmen also posed written questions to and got written answers for those questions from TPL prior to deciding whether to assign TPL the right of first refusal to purchase the property in accordance with Chapter 61.  The members of the Board of Selectmen involved believed that TPL had the ability to honor the assignment and make the project work. Id., ¶ 10.

On February 11, 2003, the Board of Selectmen for the Town voted to assign the Town's right under Chapter 61, § 8 to purchase the property to the TPL.  The Town notified the Plaintiff of its vote by letter dated February 12, 2003, and enclosed a copy of the Assignment. Town's Statement of Facts, ¶ 11.  The Trust For Public Land accepted the assignment of the right of first refusal to purchase the property.  The Assignment stated that "Town hereby assigns and transfers all of its Rights of First Refusal to exercise an option to purchase the property…". Id., ¶ 12.

On February 13, 2003, TPL notified the plaintiff that the Town had assigned its right of first refusal to it.  Town's Statement of Facts, ¶ 13.  TPL further notified the plaintiff that it "elects to exercise the Right of First Refusal under M.G.L. c. 61, Section 8 that was assigned to TPL by the Town of Stow and assume the position of buyer under the above-referenced agreement." Id. TPL meanwhile transmitted with that letter a check in the amount of $11,500 payable to the plaintiff. Id., ¶ 14.  This sum represented the initial $10,000 deposit required by the Agreement and the first monthly $1500 deposit due each month until closing. Id.  At no time did Stow and TPL hold themselves out as legal partners in the purchase of the property.  Town's Statement of Facts, ¶ 15.

TPL made a formal proposal for funding of its undertaking to the Stow Community Preservation Committee ("CPC").  The CPC approved a total of

3

$400,000. This plan went before the Stow Town Meeting, which voted to approve both categories of the requested funds. Town's Statement of Facts. ¶ 16. Despite its fundraising and others efforts to close the purchase, TPL subsequently defaulted on the P&S Agreement. The closing date came and went and TPL did not close on the property on September 26, 2003. Id., ¶ 17.

The Plaintiff has retained all deposits that had been made to her under the Agreement (the $10,000 initial deposit plus all of the $1500 monthly deposits paid in the months following the Assignment, for a total of $19,000). Town's Statement of Facts, ¶ 18. The Plaintiff still owns the Property. Id., ¶ 19. The failed P&S Agreement has not impaired the plaintiff's ability to sell or use the Property. Id., ¶ 20. The Plaintiff has not tried to sell the Property since the default, and she admits that she is not currently trying to sell the Property. Id., ¶ 21. Several interested individuals have approached the plaintiff about buying the property subsequent to the default, which plaintiff has rejected or failed to consider. Id., ¶ 22.

**II. Argument**

**A. Summary Judgment Standard.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party objecting to summary judgment must set forth specific facts proving a genuine issue of material fact in order to "deflect the swing of the summary judgment scythe." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir. 2005).

4

Where "the non-moving party rests 'merely upon conclusory allegations, improbable inference, and unsupported speculation,' " summary judgment will be appropriate.  <u>Forestier Fradera v. Municipality of Mayaguez</u>, 440 F.3d 17, 21 (1st Cir. 2006).

In the present case, summary judgment should be granted as there are no material issues of fact in dispute and the defendant Town of Stow is entitled to summary judgment as a matter of law.

    **B.**    **The Defendant Town Is Entitled to Summary Judgment in Its Favor On the Plaintiff's Complaint.**

Count I (contract and specific performance) and Count VI (violation of 42 U.S.C. §§ 1983 and 1988) are the only counts directed at Stow.  Counts III (unfair and deceptive acts), and Count V (intentional interference with a contractual relationship), and Count VII (fraud and misrepresentation) reference Stow solely in terms of "Partnership of Stow and TPL," and not Stow separately.[2]  For the reasons discussed below, Stow is entitled to summary judgment in its favor on all counts.

    **1. Count I Against the Town for Specific Performance Fails.**

The plaintiff in Count I alleges that the "P&S is a valid and enforceable contract for the sale of land between Kunelius and Stow and TPL" and that "Stow and TPL reneged on and breached their obligation under the terms of the P&S."  Complaint, ¶¶ 58, 60.  This count fails as against the Town, however, by virtue of its assignment of the right of first refusal to TPL, as permitted under M.G.L. c. 61A.

---

[2] Count IV (intentional infliction of emotional distress) likewise was directed at the "Partnership," and not Stow separately.  This Court dismissed Count IV in May 2006.

5

Under M.G.L.A. c. 61A, § 8 and § 14, forest and agricultural land respectively is assessed at a rate significantly lower than its value under the highest and best use standard on which real property is typically assessed.  In return for a lower assessment and lower taxes, the owner agrees that the municipality will have the right of first refusal should the property be sold or converted to nonagricultural use. Under c. 61A, a town's right of first refusal ripens into an option to purchase when the town receives notice of an intended sale of land.  See generally Stone v. W.E. Aubuchon Co., 29 Mass. App. Ct. 523, 526 (1990).  A town with a right of first may exercise that option or it may assign its option to a nonprofit conservation organization, for example.  M.G.L. c. 61, § 8.  An assignment divests the town of the option.  Indeed, it has been stated that, once an assignment is made, all interests and rights of the assignor are transferred to the assignee, and the assignor losses all control over the thing assigned. AmJur.2d Assignments § 155.  See Owens v. McDermott, Will & Emery, 36 Ill.App.3d 340, 736 N.E.2d 145 (2000).

Here, the Town assigned its first refusal option to TPL.  By virtue of that assignment, it was TPL that had control over the option and it was TPL that exercised that right -- not the Town.  It was TPL, not the Town, that then had a contract with the plaintiff.   The Town was not a party to the same.  It was TPL, not the Town, that defaulted on the P&S, as TPL acknowledges in its summary judgment papers, including at its Statement of Facts, ¶ 74.  The plaintiff's claim

for breach of contract and specific performance against Stow thus fails for this reason.[3]

    **2. Count VI against the Town under 42 U.S.C. § 1983 Fails**.

The plaintiff's Section 1983 claim fails because she cannot establish the essential elements of this claim.

In <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978), the Supreme Court held that a plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or a "custom" that caused the plaintiff's injury. A plaintiff must meet the requirements for such a § 1983 claim, including showing a custom or practice attributable to the municipality that is "so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." <u>Bordanaro v. McLeod</u>, 871 F.2d 1151, 1156 (1st Cir. 1989).

The plaintiff here has not alleged, and has not shown, any such municipal custom or policy. The § 1983 claim, and the complaint as a whole, reads in terms of the default or "reneging" on the P&S. As discussed above, and in the summary judgment papers of TPL (including in its discussion of § 1983 at Argument V which the Town incorporates herein by this reference), it was TPL, not the Town, who stepped into the shoes of the buyer, Cohousing, on the P&S. The Town had nothing to do with the P&S. Responsibility for closing the

---

[3] Even if the Town had not assigned the option to TPL but had itself exercised the right and then defaulted, it would still be entitled to summary judgment on Count for the reasons stated by TPL in its summary judgment memorandum at Argument I, which discussion is incorporated herein by this reference.

7

transaction lay with TPL, not the Town. The Town cannot be said to have had any "custom or policy" in terms of the default on the P&S. The § 1983 claim against the Town fails on this basis.

The plaintiff's § 1983 claim would otherwise fail given that she has not established the deprivation of any constitutional right, a key underpinning of any § 1983 claim. The plaintiff claims she was unlawfully deprived her of property without just compensation under the Fifth Amendment through a "constructive taking" of the value of her property, but this contention fails. First of all, a taking involves governmental action but, again, it was not the Town who took any action regarding the property. It expressly assigned its right to do so over to a private entity, TPL. But, in any event, governmental action short of actual acquisition of property may be a constructive taking within the meaning of the Fifth and Fourteenth Amendments only if such action deprives the property owner of all or most of his or her interest in the subject matter. See Trager v. Peabody Redevelopment Authority, 367 F. Supp. 1000, 1002 (D. Mass. 1973). This simply is not the case here.

As discussed in TPL's memorandum of law on summary judgment (Argument V), which discussion is incorporated herein, the plaintiff still owns her property and has beneficial use of it. The plaintiff does claim otherwise. She simply asserts she has been "damaged." However, vague and conclusory assertions fail to stave off summary judgment. See Forestier Fradera, 440 F.3d at 21. Moreover, to the extent, if any, that the plaintiff is contending that the property has suffered somehow in value, such claim is insufficient to present a cognizable claim for taking of an interest in property under the Fifth and Fourteenth Amendments. Florida East Coast Properties, Inc. v. Metropolitan

Dade County, 572 F.2d 1108, 1111 (5th Cir.), *cert. denied*, 439 U.S. 894, 99 S.Ct. 253 (1978); Cabrera v. Municipality of Bayamon, 562 F.2d 91 (1st Cir. 1977).

The plaintiff's complaint also alleges she was deprived of property without due process of law but she has not detailed this contention. To the extent, if any, that she attempts to allege a procedural due process violation, it fails. Procedural process requires that procedures provided in effecting the deprivation of a liberty or property interest are adequate in light of affected interest but, again, there has been no "deprivation" of a property interest here. Meanwhile, for a violation of substantive due process rights, the plaintiff must show, *inter alia*, that the defendant engaged in behavior that is "conscience-shocking." Mongeau v. City of Marlborough, 492 F.3d 14 (1st Cir. 2007). There certainly is no such conduct alleged here. The defendant Town is entitled to summary judgment in its favor on Count VI.

> **3. The Town is Entitled to Summary Judgment on the Claims for Violation of M.G.L. c. 93A, Intentional Interference with a Contractual Relationship, and Fraud and Misrepresentation  (Counts III, V, and VII) Because They Are Not Asserted Against the Town of Stow but Against the "Partnership of Stow and TPL" (Counts III, V, and VII) and There Was No Such Partnership.**

Count III, V, and VII, asserting claims for violation of c. 93A, interference with a contractual relationship and fraud and misrepresentation respectfully are not asserted against the Town of Stow, and could not be maintained against Stow.[4] Rather, the plaintiff asserts these claims against the "Partnership of Stow

---

[4] The town is immune from the intentional torts of fraud and misrepresentation and intentional interference with contractual relations by virtue of M.G.L. c. 258, § 10(c). Meanwhile, there is no case deciding that a municipality may be liable under M.G.L. c. 93A, but a municipality clearly would not be liable under the statute for conduct motivated by legislative mandate or governmental function (i.e. conduct taken pursuant to M.G.L. c. 61), and not

and TPL."  The plaintiff, however, should not be permitted to end run its inability to lodge such claims against the Town in this fashion.

In any event, the plaintiff has failed to show the existence of any such "partnership."  As discussed in detail in TPL's memorandum of law in support of summary judgment, Argument III, which argument is incorporated herein by this express reference, the plaintiff (1) has not and cannot produce evidence of any partnership "in fact" between TPL and Stow and (2) has not and cannot establish facts sufficient to allow recovery based on any partnership by estoppel.  All claims brought against the alleged "Partnership of Stow and TPL" thus fail as a matter of law.

### III. Conclusion.

For the reasons set forth above, and including those set forth in the summary judgment papers submitted by TPL which are incorporated herein, summary judgment should enter in favor of the defendant Town of Stow.

Respectfully submitted,
The Defendant, The Town of Stow,
By its attorneys,

*/s/ Deborah I. Ecker*
Deborah I. Ecker, BBO# 554623
Deidre Brennan Regan, BBO# 552432
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: October 17, 2007

---

"trade or commerce."  See Park Drive Towing, Inc. v. City of Revere, 442 Mass. 80, 809 N.E.2d 1045, 1051 (2004) (stating there has been no occasion to decide whether a municipality is amenable to the provisions of G.L.c. 93A, but that a municipality clearly would not be liable where it was not acting in a "business" context, but was motivated by legislative mandate or public function).