UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARILYN KUNELIUS,<br><br>       Plaintiff,<br><br>v.<br><br>TOWN OF STOW, et al.<br><br>       Defendants. | Civil Action No. 05-11697-GAO |

## DEFENDANTS THE TRUST FOR PUBLIC LAND AND CRAIG A. MACDONNELL'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

Pursuant to Local Rule 56.1, Defendants The Trust For Public Land and Craig A. MacDonnell ("MacDonnell") (collectively, "TPL") hereby submit their response to Plaintiff Marilyn Kunelius' Statement of Undisputed Facts in support of her motions for summary judgment against TPL, MacDonnell and the "partnership of unknown name between Town of Stow and The Trust For Public Land." Each numbered paragraph below responds to the corresponding paragraph number in Plaintiff's Statement of Undisputed Facts.[1] As discussed more fully in the Memorandum of The Trust For Public Land and Craig A. MacDonnell in Opposition to Plaintiff's Motions for Summary Judgment and in Further Support of Their Motions for Summary Judgment, not only does TPL dispute the majority of Plaintiff's statements, but TPL also asserts that the vast majority of Plaintiff's statements are immaterial to the issues presented on summary judgment.

---

[1] Plaintiff filed four motions, each with an identical Statement of Undisputed Facts, one against each of the named defendants: the Town of Stow, TPL, Craig MacDonnell and "a partnership of unknown name between the Town of Stow and TPL." So as not to burden the Court with additional unnecessary paper, TPL and MacDonnell hereby submit this response to the identical statements of undisputed facts in Plaintiff's motions against TPL, MacDonnell, and the "partnership of unknown name between the Town of Stow and TPL."

As an initial matter, all legal argument included in Plaintiff's motions for summary judgment that follows her identical statements of undisputed facts should be stricken as improper under Local Rules 7.1(B)(4) and 56.1. Plaintiff sought leave of court to file an over-length brief, namely a 57-page Memorandum of Law in support of her motions for summary judgment, far in excess of the 30-page limit originally granted to all parties. Given that Plaintiff has enjoyed the luxury of 27 additional pages of memorandum, she should not also be entitled to the roughly 15 additional pages of legal argument that she has submitted in her motions for summary judgment against the TPL, MacDonnell and the "partnership of unknown name." These 15 pages of legal argument are in excess of the already generous limit afforded her and should not be considered on summary judgment. Similarly, all citations to the Complaint in Plaintiff's Statement of Undisputed Facts should be stricken as they cannot form the basis for summary judgment in Plaintiff's favor. *Mack v. Great Atl. and Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

## RESPONSE TO STATEMENT OF FACTS

1. Undisputed.[2]

2. Undisputed.

3. Disputed. TPL admits that TPL is a nonprofit foreign corporation organized under the laws of California with a principal place of business in California and an office at 33 Union Street, Boston, Massachusetts and that TPL is a 501(c)(3) organization. However, the remainder of Plaintiff's statement is a legal conclusion not requiring a response.

---

[2] The statements of fact described in this Response as "undisputed" are admitted only for purposes of summary judgment. TPL and MacDonnell explicitly reserve their rights to contest any and all of Plaintiff's factual allegations at trial and outside the context of this litigation, and intend to strictly hold Plaintiff to her burden of proof on all matters in the event of trial. Further, by responding to a fact contained in Plaintiff's Statement, TPL and MacDonnell do not waive their right to contest such fact as immaterial for purposes of summary judgment and at trial.

4. Disputed. TPL does not dispute that on February 11, 2003, TPL and Stow entered into an agreement in which TPL agreed to accept assignment of a statutory right of first refusal ("ROFR") under Massachusetts General Laws c. 61 from Stow. The document cited by Plaintiff does not support her statement that TPL and Stow entered into an agreement to acquire Plaintiff's property located at 142 and 144 Red Acre Road, Stow, Massachusetts (the "Property").

5. Undisputed.

6. Disputed. TPL does not dispute that the Friends of Red Acre ("FORA") was an unincorporated group of Stow's citizens who were abutters and neighbors to the Property who recruited and assisted TPL in its efforts to purchase the Property.

7. Undisputed.

8. Disputed. The referenced exhibits do not support Plaintiff's statement.

9. Disputed. TPL does not dispute that the purchase price for the Property in the P&S was $1,116,900.00. Complaint ¶ 12. However, the document cited by Plaintiff does not support her vague allegation that the purchase price included "other valuable considerations."

10. Undisputed.

11. Disputed. TPL does not dispute that the P&S anticipated Cohousing seeking approvals for a multifamily affordable housing development under Massachusetts General Laws c. 40B. However, the referenced documents do not support Plaintiff's statement that Cohousing notified Stow of its plans for the Property or that c. 40B enables developers to avoid local zoning.

12. Disputed. TPL does not dispute that the Property was classified under Chapter 61 and that Stow had a statutory right of first refusal to meet a bona fide offer to purchase the Property. Chapter 61 speaks for itself and its construction is a matter of law for the Court.

LIBA/1846269.1

13. Disputed. TPL does not dispute that it knew that c. 40B developments are subject to a different set of permitting requirements than other forms of development and that they must still seek certain approvals. *See* Pl. Mot. Ex. A, Stookey Dep. Tr. Vol. I at 79:15-23.[3]

14. Disputed. TPL does not dispute that Stow properly and timely assigned the ROFR to TPL and that TPL accepted and exercised the ROFR, thereby stepping into the shoes of the original buyer in the P&S. However, the referenced documents do not show that Stow exercised the ROFR. The remainder of Plaintiff's statement is a legal conclusion, and construction of Chapter 61 is a matter of law for the Court.

15. Disputed. TPL does not dispute that prior to Stow's assignment of the ROFR to TPL, Stow Town Counsel Jacob Diemert recommended to the Board of Selectmen that it seek indemnification. However, Plaintiff's Mot. Ex. J is dated February 25, 2003, well after assignment of the ROFR, and the deposition testimony Plaintiff cites pertains to events that occurred in September, 2003, a full seven months after assignment.

16. Undisputed, however the document cited by Plaintiff shows that Stow's Board of Selectmen voted on February 11, 2003 to assign its ROFR to TPL.

17. TPL does not dispute that Stow assigned its ROFR to TPL, however the correct statutory reference is M.G.L. c. 61 section 8.

18. Undisputed.

19. Disputed. TPL does not dispute that on February 10, 2003 Town Counsel Jacob Diemert sent a letter to Town Administrator Bill Wrigley and members of the Board of Selectmen. The referenced letter speaks for itself.

---

[3] Plaintiff has unaccountably filed two Appendices on summary judgment—one in support of her motions for summary judgment, and one in support of her Memorandum of Law. Consequently, there is no unique identifier for each of Plaintiff's exhibits. Throughout TPL's submissions, exhibits from Plaintiff's Motion Appendix are designated "Mot. Ex." and those from her Memorandum Appendix are designated "Mem. Ex."

4

LIBA/1846269.1

20. Undisputed.

21. Disputed. TPL does not dispute that prior to TPL's acceptance of and exercise of the ROFR, MacDonnell had a telephone conversation with Plaintiff in which she mentioned that the sale of her Property was important to her financial well-being. However, MacDonnell testified both that he did not recall telling Plaintiff that sale to TPL was a certainty *and* that he did not believe he did so. Pl. Mot. Ex. C, MacDonnell Dep. at 88-89.

22. Disputed. Plaintiff mischaracterizes MacDonnell's deposition testimony. MacDonnell testified both that he did not recall telling Plaintiff that sale to TPL was a certainty *and* that he did not believe he did so. Pl. Mot. Ex. C, MacDonnell Dep. at 88-89.

23. Undisputed.

24. Undisputed that TPL used the term "partnership" in its colloquial sense.

25. Disputed. TPL does not dispute that at the time of assignment of the ROFR, Stow agreed to request authority for use of Community Preservation Act ("CPA") funds for the acquisition of open space and affordability restrictions on the dwellings on the Property.

26. Disputed. The referenced citation to MacDonnell's deposition transcript does not support this allegation; indeed, it does not even address this issue. TPL assumes that Plaintiff's counsel intended to cite page 193 of MacDonnell's deposition transcript, which is cited in Plaintiff's Memorandum of Law. However, Plaintiff, in her Memorandum, misquotes MacDonnell's testimony. Neither page 183 cited in Plaintiff's Statement of Undisputed Facts, nor page 193 cited in Plaintiff's Memorandum, support Plaintiff's statement.

27. Disputed. TPL does not dispute that TPL did not plan to pursue a 30-unit, multifamily 40B development on the Property and that Stow was aware that TPL did not plan to pursue a 40B development on the Property.

LIBA/1846269.1

28. TPL does not dispute that on January 30, 2003 TPL authored a Trust For Public Land Project Fact Sheet for the Kunelius Property. The Project Fact Sheet speaks for itself. TPL notes that the referenced exhibit (Pl. Mot. Ex. N, TPL-KUN 00372-00386) is not the January 30, 2003 iteration of the Project Fact sheet; the January 30, 2003 iteration is cited as Plaintiff's Mot. Ex. BB, TPL-KUN 01124-01138.

29. Disputed. TPL does not dispute that on March 19, 2003 MacDonnell wrote an email to FORA stating that "a number of" assumptions appeared to be unworkable. However, the document referenced as Plaintiff's Mot. Ex. O does not support Plaintiff's allegation that TPL and MacDonnell realized that all assumptions regarding structure and timing for TPL's acquisition of the Property were unworkable.

30. Disputed. TPL does not dispute that TPL informed Stow Town officials and others prior to assignment of the ROFR that TPL had completed its purchases under all prior assignments of municipal rights of first refusal under the Chapter Lands statutes.

31. Disputed. The referenced exhibit does not support Plaintiff's statement.

32. Disputed. The referenced exhibits do not support Plaintiff's statement.

33. Disputed. TPL does not dispute that when it became apparent that TPL would not be able to pay the original contract price, TPL contacted Plaintiff's counsel to communicate that information and to inquire whether Plaintiff would consider a purchase price concession.

34. Disputed. The P&S states that it governs the sale of the entire 50 acre parcel of land ("Included in the sale as a part of said premises are 50.67 acres of land"). Complaint Ex. 1 ¶ 3.

35. Disputed. TPL does not dispute that it understood it would likely need some zoning relief for its planned subdivision and private sale of the caretaker's residence on the Property. However, the referenced exhibit does not support Plaintiff's statement.

36. Disputed. TPL does not dispute that Plaintiff's Mot. Ex. S is an email that MacDonnell sent to FORA members reporting on a telephone conversation he had with Plaintiff. However, Plaintiff misquotes the referenced exhibit.

37. Disputed. The referenced document is a preliminary draft document identifying some initial zoning issues and questions related to the Property.

38. Disputed. Plaintiff mischaracterizes the referenced exhibit. TPL does not dispute that the referenced exhibit is an email from Stow Town Planner Karen Kelleher raising zoning issues and questions in connection with TPL's plans for the Property.

39. Disputed. Prior to Stow's assignment of the ROFR, TPL had reason to believe that it was likely that TPL would be granted the zoning relief it sought. *See* Pl. Mem. Ex. Q, TPL-KUN 00181; *see also* MacDonnell Decl. ¶ 13 and TPL Supp. App. Ex. 1, TPL-KUN 01963.

40. Disputed. Prior to Stow's assignment of the ROFR, TPL had reason to believe that it was likely that TPL would be granted the zoning relief it sought. *See* Pl. Mem. Ex. Q, TPL-KUN 00181; *see also* MacDonnell Decl. ¶ 13 and TPL Supp. App. Ex. 1, TPL-KUN 01963.

41. Disputed. Prior to Stow's assignment of the ROFR, TPL had reason to believe that it was likely that TPL would be granted the zoning relief it sought. *See* Pl. Mem. Ex. Q, TPL-KUN 00181; *see also* MacDonnell Decl. ¶ 13 and TPL Supp. App. Ex. 1, TPL-KUN 01963.

42. Disputed. TPL does not dispute that it was aware that zoning relief would likely be needed to proceed with TPL's limited development plans for the Property. However, the referenced exhibit does not support Plaintiff's statement that MacDonnell received confirmation on February 6, 2003 that obtaining variances and permits was unlikely. In fact, prior to assignment of the ROFR, TPL had reason to believe that it was likely that TPL would be granted the zoning relief it sought (*see* Pl. Mem. Ex. Q, TPL-KUN 00181; *see also* MacDonnell Decl. ¶

7

13 and TPL Supp. App. Ex. 1, TPL-KUN 01963), and the referenced exhibit shows that that Karen Sommerlad of FORA continued to elicit advice on zoning considerations and alternatives.

43.    Disputed. TPL does not dispute that Plaintiff's Exhibit Z is an email from Donna Jacobs commenting on one potential aspect of zoning relief for the Property. However, the referenced exhibit does not support Plaintiff's statement.

44.    Undisputed.

45.    Disputed. Plaintiff mischaracterizes the document cited. TPL does not dispute that as of January 30, 2003 TPL understood that the P&S covered the full 50 acres. Complaint Ex. 1 ¶ 3 ("Included in the sale as a part of said premises are 50.67 acres of land").

46.    Disputed. TPL does not dispute that as of January 30, 2003 TPL understood that the liquidated damages clause of the P&S limited its liability to the buyer in the event of default, but the documents cited do not show that TPL knew "that it was likely that it may have to rely" on the liquidated damages clause.

47.    Disputed. The documents cited by Plaintiff do not support her allegation that the purchase price was for approximately 8.57 acres only and the remaining 42+ acres were not included in the P&S. The P&S states that "included in the sale as a part of said premises are 50.67 acres of land." Complaint Ex. 1 ¶ 3.

48.    TPL does not dispute that as of March 10, 2003, less than one month after assignment of the ROFR and over six months before the September 26, 2003 closing date, TPL was still evaluating zoning relief and it had not yet submitted a variance application.

49.    Disputed. Plaintiff mischaracterizes the document cited. TPL does not dispute that TPL had internal discussions regarding the mortgage provision of the P&S. *See* Pl. Mot Ex. C, MacDonnell Dep. Tr. at 92:6-96:2.

50. Disputed. Plaintiff mischaracterizes the document cited. TPL does not dispute that Plaintiff's Mot. Exhibit HH is an internal draft prepared by MacDonnell in connection with the DHCD grant application, however, Exhibit HH is only a draft and was not sent to the DHCD.

51. TPL does not dispute that the language quoted in Plaintiff's Statement of Undisputed Facts ¶ 50 was included in Plaintiff's Exhibit II and that Exhibit II was submitted to the DHCD in support of Stow's grant application.

52. TPL does not dispute that Plaintiff's Mot. Exhibit II was forwarded to DHCD, however Exhibit II states that any use of the Wainwright Bank revolving line of credit was "subject to TPL's internal approval process, including customary due diligence and approval by the board of directors."

53. Disputed. The referenced testimony does not support Plaintiff's statement.

54. Disputed. The referenced exhibit is an email dated April 28, 2003, not a letter dated April 15, 2003, and does not support Plaintiff's statement. TPL does not dispute that TPL and Stow executed a letter on or about April 15, 2003, a draft of which is Exhibit KK to Plaintiff's Memorandum, and which speaks for itself.

55. Disputed. TPL does not dispute that in April, 2003 there was $5,000 in availability on the Wainwright Bank revolving line of credit. However, there is no evidence to support Plaintiff's statement that MacDonnell was aware of its balance in April 2003, or that MacDonnell and TPL knew that the funds would not be available on the closing date of September 26, 2003. Plaintiff also omits testimony that TPL had other lines of credit available if it chose to use them. Pl. Ex. Mot. KK, Stookey Dep. Tr. Vol. II at 26:20-27:5.

56. Disputed. The referenced exhibit does not support Plaintiff's statement.

57. Disputed. The referenced exhibit does not support Plaintiff's statement.

9

LIBA/1846269.1

58.  Disputed. The referenced exhibit does not support Plaintiff's statement. TPL does not dispute that it intended to subdivide the Property and that it held discussions internally.

59.  TPL does not dispute that it was aware that zoning relief could not be assured, however, in May, 2003, TPL still believed it would be able to obtain the variance sought by its May 6, 2003 application to the ZBA. *See* Stow Annual Town Meeting minutes, May 21, 2003, TPL Supp. App. Ex. 3.

60.  Disputed. Plaintiff mischaracterizes the document cited. TPL does not dispute that after denial of the DHCD grant application on or about July 2, 2003, TPL concluded that it had a fundraising shortfall and that it likely would not be able to complete its purchase of the Property without a price concession from Plaintiff.

61.  TPL does not dispute that it received Pl. Mot. Ex. PP and that Ex. PP includes an email from Peter Christianson of FORA providing information concerning TPL's variance application and that the information was not encouraging.

62.  Disputed. TPL does not dispute that on July 10, 2003, Stow Town Counsel Jacob Diemert sent TPL the letter cited as Pl. Mot. Ex. QQ. Exhibit QQ speaks for itself.

63.  Disputed. TPL does not dispute that TPL inquired of Plaintiff's representatives whether Plaintiff would be willing to consider a reduced purchase price.

64.  Disputed. TPL does not dispute that on or about August 1, 2003, TPL spoke with Plaintiff's counsel and broker and informed them that TPL would not be able to go forward with the purchase of Plaintiff's Property at the original contract price and inquired about the possibility of a purchase price concession.

LIBA/1846269.1

65. Disputed. TPL does not dispute that MacDonnell met with Plaintiff and her attorney on or about August 4, 2003 and requested that Plaintiff consider a purchase price concession, but that Plaintiff was unwilling to do so.

66. Disputed. TPL does not dispute that Pl. Mot. Ex. UU is a letter dated August 19, 2003 from FORA to MacDonnell. The referenced exhibit speaks for itself.

67. TPL states that it satisfied its obligations upon default through retention by Plaintiff of all deposits as liquidated damages in accordance with the terms of the P&S Agreement.

68. Disputed. TPL does not dispute that the referenced document was written by Greg Jones, a member of the Stow Board of Selectmen. However, Mr. Jones testified that he is unsure whether it was submitted to the Board of Selectmen. TPL Supp. App. Ex. 4, Jones Dep. Tr. at 37:5-10.

69. TPL does not dispute that subsequent to assignment of the ROFR, the Town of Stow voted to appropriate $300,000 of CPC funds for the acquisition of open space and $100,000 of CPC funds for the acquisition of affordability restrictions on the dwellings on the Property.

70. Disputed. TPL does not dispute that subsequent to TPL's default on the P&S in September, 2003, MacDonnell contacted Plaintiff's counsel by letter dated July 6, 2004 and states that the letter speaks for itself.

71. TPL does not dispute that Plaintiff has refused to accept anything less than the original purchase price for the Property.

72. Disputed. TPL does not dispute that on September 9, 2003, MacDonnell sent a letter to Plaintiff's counsel, attached as Exhibit 12 to the Complaint, informing Plaintiff that it was not feasible for TPL to go forward under the existing contract and states that the September 9, 2003 letter speaks for itself.

11

73. Undisputed. TPL states that Complaint Ex. 12 speaks for itself.

74. Disputed. TPL does not dispute that in the Spring of 2004, after TPL had defaulted on the P&S in September, 2003, MacDonnell met with Plaintiff, her counsel Peter Kachajian, her real estate broker Jim Boothroyd, David Norris and others. At the meeting, Mr. Kachajian threatened suit against TPL and discussion ensued in which both sides discussed their view of the merits of such litigation. *See* Pl. Mot. Ex. C, MacDonnell Dep. Tr. at 200:10-204:1; MacDonnell Decl. ¶ 27.

75. Disputed. To the extent this statement includes a legal conclusion, no response is necessary. TPL disputes this statement as a mischaracterization of the document cited. TPL does not dispute that TPL's July 6, 2004 letter reminded Plaintiff and her counsel that the parties were no longer under contract and that the deposits retained by Plaintiff discharged the parties from any further obligations under the P&S.

76. TPL does not dispute that Plaintiff had no reason to know of TPL's plans for the Property. However, Plaintiff admits that she was aware that her Property was classified under Chapter 61 and that she was required to offer the Town a ROFR upon any bona fide offer to purchase the Property, and her broker and attorney understood that the Town could assign its ROFR to a nonprofit conservation organization. Pl. Mot. Ex. G, Kunelius Dep. Tr. Vol. I at 15:17-22; Pl. Mot. Ex. M, Kunelius Dep. Tr. Vol. II at 37:15-18; Pl. Mot. Ex I, Kachajian Dep. Tr. at 53:15-54:1; Pl. Mot. Ex. XX, Boothroyd Dep. Tr. at 77:21-78:16, 83:18-23.

77. Disputed. Plaintiff misquotes and mischaracterizes MacDonnell's testimony. The deposition testimony cited by Plaintiff actually states that *if* TPL *had been* successful in conserving the property, the property *would not have* been developed: "were we successful in

conserving the property, the property would have been conserved and not developed." Pl. Mot. Ex. C, MacDonnell Dep. Tr. at 193:22-23.

78. Disputed. On November 25, 2003, Stow's Board of Selectmen voted not to re-exercise the ROFR if Cohousing returned. *See* TPL Supp. App. Ex. 5, Minutes of Board of Selectmen Hearing, 11/25/03.

79. Disputed. The referenced exhibits do not support Plaintiff's statement. TPL does not dispute that TPL accepted assignment of and exercised the ROFR, became the buyer under the P&S agreement and defaulted under the P&S. However, Plaintiff's P&S with Cohousing had numerous contingencies and did not guarantee that she would collect the purchase price under the P&S of $1,116,900. *See* Complaint Ex. 1 ¶¶ 26, 34, 35.

80. Disputed. The referenced testimony does not support Plaintiff's statement. TPL does not dispute that before assignment of the ROFR, TPL reviewed the P&S and believed the liquidated damages clause would apply in the event of default, but the documents cited do not show the existence of any partnership between Stow and TPL or any intent of such partnership.

81. Disputed. TPL does not dispute that a grant application was submitted to the DHCD on behalf of Stow, that TPL assisted in drafting the grant application, and that Exhibit II contains the language quoted by Plaintiff. TPL further responds that the exhibit speaks for itself.

82. TPL does not dispute that Stow was aware of the grant application to the DHCD, as the document cited by Plaintiff shows that the application was submitted by Stow.

83. TPL does not dispute that the DHCD grant application included the document cited as Pl. Mot. Ex. CCC, and that the document states that use of the Wainwright Bank revolving line of credit was subject to "normal due diligence and internal TPL review."

13

84. Disputed. TPL does not dispute that the Wainwright Bank $6 million revolving line of credit had availability of $5,000 in April, 2003 when the DHCD grant application was submitted. However, there is no evidence to support Plaintiff's allegations that MacDonnell was aware of its balance in April 2003, or that MacDonnell and TPL knew that the funds would not be available on the closing date of September 26, 2003. Plaintiff omits evidence that TPL had substantial national credit lines available if it chose to use them. Pl. Mot. Ex. KK, Stookey Dep. Tr. Vol. II at 26:20-27:5. Plaintiff also omits testimony by TPL's 30(b)(6) deponent that it is possible that TPL anticipated that the Wainwright Bank revolving line of credit would be paid back prior to the closing date, and in fact it was paid down in October, 2003. Pl. Mot. Ex. KK, Stookey Dep. Tr. Vol. II at 25:6-19.

85. TPL admits informing Plaintiff that its fundraising efforts had not been successful, however, Plaintiff mischaracterizes the documents and testimony cited, and omits related, relevant testimony. Plaintiff cites deposition testimony by Serena Furman as well as documents authored by Ms. Furman and her husband to support her allegation that "TPL had ordered that no fundraising take place." However, Plaintiff fails to cite portions of Ms. Furman's testimony in which she affirmatively states that TPL never ordered that no fundraising take place. *See* Pl. Mot. Ex. Q, Furman Dep. Tr. Vol. II at 60:15-22. Plaintiff also omits relevant testimony by Ms. Furman that TPL did, in fact, undertake significant fundraising efforts. Pl. Mot. Ex. D, Furman Dep. Tr. Vol. I at 80:7-14.

86. Disputed. TPL does not dispute that Plaintiff has been free to sell the Property at all times since TPL's default. However, the undisputed evidence shows that Plaintiff has made no effort to sell the Property. Pl. Mot. Ex. M, Kunelius Dep. Tr. Vol. II at 125:22-126:7. Furthermore, Plaintiff omits relevant testimony by Plaintiff's real estate broker Mr. Boothroyd

14

that the Property continued to be listed as "under agreement" and that such listing designation would deter potential purchasers. Pl. Mot. Ex. XX, Boothroyd Dep. Tr. at 185:11-186:14.

87.     Disputed. TPL does not dispute that Plaintiff has been free to sell the Property at all times since TPL's default. However, Plaintiff omits relevant testimony by Mr. Boothroyd that the Property continued to be listed as "under agreement" and that such listing designation would deter potential purchasers. Pl. Mot. Ex. XX, Boothroyd Dep. Tr. at 185:11-186:14.

## RESPONSE TO PLAINTIFF'S LEGAL ARGUMENT

In addition to Plaintiff's identical statements of undisputed facts, Plaintiff has included in each of her motions for summary judgment a discussion of her legal arguments. As discussed above, TPL believes inclusion of such legal argument in her motions for summary judgment is inappropriate under Local Rules 7.1(B)(4) and 56.1 and should be disregarded.

For its response to Plaintiff's argument for summary judgment on Count I (Contract and Specific Performance), TPL refers the Court to, and incorporates by reference, pages 7-14 of the Memorandum of TPL and Craig MacDonnell in Opposition to Plaintiff's Motions for Summary Judgment and in Further Support of Their Motions for Summary Judgment ("TPL's Opposition Memorandum") and pages 4-15 and 28-29 of the Memorandum of TPL and Craig MacDonnell in Support of Their Motions for Summary Judgment ("TPL's Memorandum").

For its response to Plaintiff's argument for summary judgment on Count II (violation of M.G.L. c. 93A against TPL), TPL refers the Court to, and incorporates by reference, pages 14-24 of TPL's Opposition Memorandum and pages 15-18 and 28-29 of TPL's Memorandum.

For its response to Plaintiff's argument for summary judgment on Count III (violation of M.G.L. c. 93A against the partnership of TPL and Stow), TPL refers the Court to, and

incorporates by reference, pages 14-24 and 29-30 of TPL's Opposition Memorandum and pages 18-20 and 28-29 of TPL's Memorandum.

For their response to Plaintiff's argument for summary judgment on Count V (Intentional Interference), TPL and MacDonnell refer the Court to, and incorporate by reference, pages 24-26 and 29-30 of TPL's Opposition Memorandum and pages 21-23 and 28-29 of TPL's Memorandum.

For their response to Plaintiff's argument for summary judgment on Count VI (42 U.S.C. 1983), TPL and MacDonnell refer the Court to, and incorporate by reference, pages 27-30 of TPL's Opposition Memorandum and pages 26-29 of TPL's Memorandum.

For their response to Plaintiff's argument for summary judgment on Count VII (misrepresentation), TPL and MacDonnell refer the Court to, and incorporate by reference, pages 26-27 and 29-30 of TPL's Opposition Memorandum and pages 21, 24-26 and 28-29 of TPL's Memorandum.

> Respectfully submitted,
>
> THE TRUST FOR PUBLIC LAND and
> CRAIG A. MACDONNELL
>
> By their attorneys,
>
> */s/ Richard A. Oetheimer*
> Richard A. Oetheimer (BBO # 377665)
> Patricia M. Murphy (BBO # 665056)
> Goodwin Procter LLP
> Exchange Place
> Boston, MA 02109
> (617) 570-1000

Dated: November 16, 2007

LIBA/1846269.1

## CERTIFICATE OF SERVICE

I, Richard Oetheimer, hereby certify that on November 16, 2007 this RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS was filed through the ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on this date.

*/s/ Richard Oetheimer*
Richard Oetheimer