UNITED STATES DISTRICT COURT
(DISTRICT OF MASSACHUSETTS)

CIVIL ACTION NO. 05-11697-GAO

MARILYN KUNELIUS,

PLAINTIFF,

V.

TOWN OF STOW separately, A
PARTNERSHIP OF UNKNOWN NAME
BETWEEN TOWN OF STOW and THE
TRUST FOR PUBLIC LAND, THE
TRUST FOR PUBLIC LAND separately
and CRAIG A. MACDONNELL, in his
individual capacity,

DEFENDANTS.

**PLAINTIFF'S RESPONSE
TO STATEMENT OF UNDISPUTED
FACTS OF THE TRUST FOR PUBLIC
LAND AND CRAIG A.
MACDONNELL**

NOW COMES the Plaintiff with this Response to Proposed Statement of Undisputed

Facts of The Trust for Public Land ("TPL") and Craig A. MacDonnell ("MacDonnell"),

stating as follows:

1. The Plaintiff disputes the Proposed Undisputed Fact #1.  TPL was acting and is

   listed at the Commonwealth of Massachusetts Secretary of State website as "for

   profit".  In addition, Proposed Undisputed Fact #1 directly contradicts Proposed

   Undisputed Fact #61. Exh. Y to Plaintiff's Memorandum indicates that TPL was

   working on and completed "the DHCD grant" on or before March 30, 2003.  In

   fact, Proposed Undisputed Fact #61 is admission that TPL was lobbying well

   before obtaining the April 22, 2003 letter from Stow in which it asked for TPL's

   "technical assistance" in "acquiring" the Plaintiff's Property.  (See Exh. PP to

   Plaintiff's Memorandum, KUN420).

2.  The Plaintiff disputes the Proposed Undisputed Fact #2.  The Plaintiff states that the Proposed Undisputed Fact #2 is immaterial to the case.  "Material facts are those that might affect the outcome of the suit under the governing law." (See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The Plaintiff further states that the Proposed Undisputed Fact #2 does not possess any logical probative value toward some fact that is **legally of consequence** to the case.  (See Fed. R. Evidence Rule 401).  The Plaintiff also disputes that TPL "improved the quality of life for [the Town of Stow or of the Plaintiff]".  As such, it should be excluded under Fed. R. Evidence Rule 403.

3.  The Plaintiff disputes the Proposed Undisputed Fact #6.  The Plaintiff states that there is no evidence that the aquifer under her Property is the largest in the area.  The Plaintiff further states that the Proposed Undisputed Fact #6 is immaterial to the case because it fails the standard for materiality to the issue before the Court.  "Material facts are those that might affect the outcome of the suit under the governing law".  (See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

4.  The Plaintiff disputes the Proposed Undisputed Fact #9.  The Plaintiff states that the Proposed Undisputed Fact #9 is immaterial to the case and the issue before the Court and it does not possess any logical probative value toward some fact that is **legally of consequence** to the case.  (See Fed. R. Evidence Rule 401).  As such, it should be excluded under Fed. R. Evidence Rule 403.

5.  The Plaintiff disputes the Proposed Undisputed Fact #10.  The Plaintiff states that she had classified under M.G.L. c. 61 only a portion of the Property.  (See Exh. G

to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; <u>see also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1;  <u>see also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; <u>see also</u> Tabs 15 and 17 to TPL's Appendix).  The Plaintiff states that the Proposed Undisputed Fact #10 contradicts the Proposed Undisputed Fact #5.

6.  The Plaintiff disputes the Proposed Undisputed Fact #11.  The Plaintiff states that she had classified under M.G.L. c. 61 only a portion of her property.  (<u>See</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; <u>see also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1; <u>see also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; <u>see also</u> Tabs 15 and 17 to TPL's Appendix).  The Plaintiff states that the Proposed Undisputed Fact #11 contradicts the Proposed Undisputed Fact #5.

7.  The Plaintiff disputes the Proposed Undisputed Fact #12. The Plaintiff states that she had classified under M.G.L. c. 61 only a portion of her property.  (<u>See</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; <u>see also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1;  <u>see also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; <u>see also</u> Tabs 15 and 17 to TPL's Appendix).  The Plaintiff states that the Proposed Undisputed Fact #12 contradicts the Proposed Undisputed Fact #5.

8.  The Plaintiff disputes the Proposed Undisputed Fact #13.  The Plaintiff states that she had classified under M.G.L. c. 61 only a portion of her property.  (<u>See</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; <u>see also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1; <u>see also</u> Exh. I to

Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; <u>see</u> <u>also</u> Tabs 15 and 17 to TPL's Appendix).  The Plaintiff states that the Proposed Undisputed Fact #13 contradicts the Proposed Undisputed Fact #5.

9.  The Plaintiff disputes the Proposed Undisputed Fact #14.  The Plaintiff states that she had classified under M.G.L. c. 61 only a portion of her property.  (<u>See</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; <u>see</u> <u>also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1; <u>see</u> <u>also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; <u>see</u> <u>also</u> Tabs 15 and 17 to TPL's Appendix).  The Plaintiff states that the Proposed Undisputed Fact #14 contradicts the Proposed Undisputed Fact #5.

10.  The Plaintiff disputes the Proposed Undisputed Fact #16.  The Plaintiff states that she wanted to sell her horse farm for the c. 40B development.  (<u>See</u> Exh. to Plaintiff's Memorandum, Kunelius deposition, pg. 7, ln. 15 – ln. 17 and pg. 9 and 8, ln. 24 – pg. 9, ln. 8; <u>see</u> <u>also</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2).  The Plaintiff further states Proposed Undisputed Fact #16 is inconsistent with Proposed Undisputed Fact #9.

11.  The Plaintiff disputes the Proposed Undisputed Fact #17.  The Plaintiff states that she intended to sell only a portion of her property.  (<u>See</u> Exh. 1 to the Complaint; <u>see</u> <u>also</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; <u>see</u> <u>also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; <u>see</u> <u>also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

12.  The Plaintiff disputes the Proposed Undisputed Fact #19.  The Plaintiff states that she engaged Mr. Kachajian as legal counsel.

13. The Plaintiff disputes the Proposed Undisputed Fact #20.  The Plaintiff states that the Proposed Undisputed Fact #20 is irrelevant and immaterial to the issues before the Court.  "Material facts are those that might affect the outcome of the suit under the governing law".  (See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

14. The Plaintiff disputes the Proposed Undisputed Fact #22.  The Plaintiff states that is the Proposed Undisputed Fact #22 irrelevant as to what Cohousing interests were and immaterial to the issues before the Court.  As such, the Proposed Undisputed Fact #22 does not meet the standard for a material fact. "Material facts are those that might affect the outcome of the suit under the governing law".  (See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The Plaintiff further states that the Proposed Undisputed Fact #22 does not possess any logical probative value toward some fact that is **legally of consequence** to the case.  (See Fed. R. Evidence Rule 401).

15. The Plaintiff disputes the Proposed Undisputed Fact #23.  The Plaintiff states that is Mosaic Commons was not a local group separate from Cohousing.  (See Exh. E to Memorandum, Kunelius deposition, pg. 50, ln. 13 – ln. 14 ("Mosaic would be a group of individuals who have somehow or other herd about Cohousing); see also Exh. F to Plaintiff's Memorandum, Boothroyd deposition, pg. 32, ln. 21 – ln. 23 ("Mosaic Commons was a group they were working for and actively looking for a property at the time that I first met Mr. ScottHansen); see also Exh. D to Plaintiff's Memorandum, Kachajian deposition, pg. 32, ln. 3 – pg. 20, ln. 23).

16. The Plaintiff disputes the Proposed Undisputed Fact #24  The Plaintiff states that there was no subdivision planned for the Property by Cohousing, rather there was a 40B affordable housing development.  (See Exh. 1 to the Complaint; see also Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2;  see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

17. The Plaintiff disputes the Proposed Undisputed Fact #25.  The Plaintiff states that she negotiated to sell a portion of her Property.  (See Exh. 1 to the Complaint; see also Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

18. The Plaintiff disputes the Proposed Undisputed Fact #26.  The Plaintiff states that her attorney, Peter A. Kachajian repeatedly asserted that the Property was not classified under Chapter 61 entirely.  (See Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶1; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶1; see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶1; see also Tabs 15 and 17 to TPL's Appendix).

19. The Plaintiff disputes the Proposed Undisputed Fact #27.  The Plaintiff states that the purchase price of $1,116,900 was for the sale of 8.57 acres of land.  (See Exh. 1 to the Complaint; see also Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

20. The Plaintiff disputes the Proposed Undisputed Fact #28.  The Plaintiff states that only a portion of the property was under agreement.  (See Exh. 1 to the Complaint; see also Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).  The Plaintiff further states that the Proposed Undisputed Fact #28 contradicts Proposed Undisputed Facts ##10, 12, 13, 14, 26 and 40.

21. The Plaintiff disputes the Proposed Undisputed Fact #29.  The Plaintiff states that the P&S governed the payment of $10,000 as earnest money to be applied against the purchase price.  (See Exh. 1 to the Complaint).

22. The Plaintiff disputes the Proposed Undisputed Fact #30.  The Plaintiff states that the reference to the Buyer in the P&S is to Cohousing and not to any subsequent buyer.  (See Exh. 1 to the Complaint, pg. 1).  Further, the Plaintiff that she disputes Proposed Undisputed Fact #30 because the term "Buyer" was capitalized term.

23. The Plaintiff disputes the Proposed Undisputed Fact #31.  The Plaintiff states that is irrelevant, immaterial to the issues before the Court, and is not admissible since it does not possess any logical probative value toward some fact that is **legally of consequence** to the case.  (See Fed. R. Evidence Rule 401).  As such, it should be excluded under  (See Fed. R. Evidence Rule 403).

24. The Plaintiff disputes the Proposed Undisputed Fact #32.  The Plaintiff states that the Proposed Undisputed Fact #32 is irrelevant and immaterial, and it does not

possess any logical probative value toward some fact that is **legally of consequence** to the case.  (See Fed. R. Evidence Rule 401).

25. The Plaintiff disputes the Proposed Undisputed Fact #34.  The Plaintiff states that the testimony of Boothroyd is misrepresented in the Proposed Undisputed Fact #34.  This is because Boothroyd did not testify that he understood that Cohousing would complete the purchase of the Property but rather that there was no guarantee for the 40B project would be completed.

```
Q.    Okay.  And there was certainly no guarantee that the
project would in fact come together, correct?
A.    That's correct.
```

(See Exh. F to Plaintiff's Memorandum, Boothroyd deposition, pg. 18, ln. 22 – pg. 190, ln. 1).

26. The Plaintiff disputes the Proposed Undisputed Fact #36.  The Plaintiff states that the Proposed Undisputed Fact #36 is not material to the issues before the Court because the Supreme Judicial Court ("SJC") issued an opinion with regard to the inapplicability to a buyer under c. 61.  (See Town of Franklin v. Wyllie, 443 Mass. 187, __, __ N.E.2d __, 2005).  Thus, the Proposed Undisputed Fact #36 it does not possess any logical probative value toward some fact that is **legally of consequence** to the case, is immaterial to the case and should be excluded under Fed. R. Evidence Rule 403.

27. The Plaintiff disputes the Proposed Undisputed Fact #37.  The Plaintiff states that the Proposed Undisputed Fact #37 is not material to the case because the SJC's opinion in Town of Franklin v. Wyllie, *supra*.  Thus, the Proposed Undisputed Fact #36 it does not possess any logical probative value toward some fact that is

**legally of consequence** to the case, is immaterial to the case and should be excluded under Fed. R. Evidence Rule 403.

28. The Plaintiff disputes the Proposed Undisputed Fact #38.  The Plaintiff states that the Proposed Undisputed Fact #38 is immaterial to the case. "Material facts are those that might affect the outcome of the suit under the governing law." (<u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  The Plaintiff further states that the Proposed Undisputed Fact #38 does not possess any logical probative value toward some fact that is **legally of consequence** to the case, is immaterial to the case and should be excluded under Fed. R. Evidence Rule 403.

29. The Plaintiff disputes the Proposed Undisputed Fact #39 is irrelevant to the case because of SJC's opinion in <u>Town of Franklin v. Wyllie</u>, *supra* and is not material to the issue before the Court.  Thus, the Proposed Undisputed Fact #36 does not possess any logical probative value toward some fact that is **legally of consequence** to the case, is immaterial to the case and should be excluded under Fed. R. Evidence Rule 403.

30. The Plaintiff disputes the Proposed Undisputed Fact #40.  The Plaintiff states that she intended to sell a portion of her Property.  (<u>See</u> Exh. 1 to the Complaint; <u>see also</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; <u>see also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; <u>see</u> <u>also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

31. The Plaintiff disputes the Proposed Undisputed Fact #41.  The Plaintiff states that MacDonnell testified that he did not know who from FORA and when initially

contacted TPL.  (<u>See</u> Exh. A to Plaintiff's Memorandum, MacDonnell deposition, page 26, line 12-16).

32. The Plaintiff disputes the Proposed Undisputed Fact #42.  The Plaintiff states that she was to sell a portion of her Property.  (<u>See</u> Exh. 1 to the Complaint; <u>see</u> <u>also</u> Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 1, ¶2; <u>see</u> <u>also</u> Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 1, ¶2; <u>see</u> <u>also</u> Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 1, ¶2).

33. The Plaintiff disputes the Proposed Undisputed Fact #45.  The Plaintiff states that the Proposed Undisputed Fact #45 does not possess any logical probative value toward some fact that is **legally of consequence** to the case and should be excluded under Fed. R. Evidence Rule 403.  The Plaintiff further states that the Proposed Undisputed Fact #45 is inconsistent with Proposed Undisputed Fact #47.

34. The Plaintiff disputes the Proposed Undisputed Fact #46.  The Plaintiff states that TPL understood that its risk was far greater than the Liquidated Damage Clause because TPL had reviewed <u>Kelly v. Marx</u>, 428 Mass. 877 (1999).  (<u>See</u> Exh. P to Plaintiff's Memorandum, TPL-KUN 01609-1612, case of <u>Kelly v. Marx</u>, 428 Mass. 877 (1999)).

35. The Plaintiff disputes the Proposed Undisputed Fact #47.  The Plaintiff states that the Proposed Undisputed Fact #47 inconsistent with Proposed Undisputed Fact #45 and as such does not possess any logical probative value toward some fact that is **legally of consequence** to the case and should be excluded under Fed. R. Evidence Rule 403.

36. The Plaintiff disputes the Proposed Undisputed Fact #48.  The Plaintiff states that TPL did not raise funds and had no plans to do so.  (See Exh. EE to Plaintiff's Memorandum, Furman0087; see also Exh. FF to Plaintiff's Memorandum, TPL-KUN1621; see also Exh. GG to Plaintiff's Memorandum, TPL-KUN03677; see also Exh. HH to Plaintiff's Memorandum, TPL-KUN01681-82)).

37. The Plaintiff disputes the Proposed Undisputed Fact #49 is disputed because TPL knew that (1) it could not do the subdivision of the property; (2) it was going to demand the entire 50.67 acres; (3) it had no authority to purchase the property and it would not know if it could until "late summer" (See Exh. W to Plaintiff's Memorandum, TPL-KUN01144-45); and (4) it was not fundraising.  In addition, the Plaintiff disputes the veracity of MacDonnell's testimony.

38. The Plaintiff disputes the Proposed Undisputed Fact #50.  the Plaintiff states that the P&S anticipated Kunelius that approximately 42.1 acres be given to Stow as donation and MacDonnell testified that TPL achieved its goal of preventing the 40B.  (See Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 193, ln. 19 – pg. 194, ln. 1).

39. The Plaintiff disputes the Proposed Undisputed Fact #51.  The Plaintiff states that the Assignment of the Right of First Refusal ("ROFR") was assigned to TPL under the terms of the P&S, i.e. for the purchase of 8.57 acres of the Plaintiff's property.  (See Exh. 1 to the Complaint; see also Exh. 3 to the Complaint, the Assignment).

40. The Plaintiff disputes the Proposed Undisputed Fact #55. The Plaintiff states that she would have intervened, had she known that TPL intended to rely on the Liquidated Damages Clause.

41. The Plaintiff disputes the Proposed Undisputed Fact #57. The Plaintiff states that is disputed. (See Plaintiff's Memorandum in Support of Plaintiff's Motions for Summary Judgment).

42. The Plaintiff disputes the Proposed Undisputed Fact #58. The Plaintiff states that there is no colloquial meaning the partnership between TPL and Stow, since Stow agreed to pay $400,000, as part of the deal. Stow & TPL were perceived by Stow citizens and the Board of Selectmen as being partners. (See Exh. 6 to the Complaint). In addition, Proposed Undisputed Fact #58 is inconsistent with Proposed Undisputed Fact #59 which demonstrates that Stow's Community Preservation Committee, a division of Stow, paid $400,000 to TPL in order to participate in the partnership, as voted by Town Meeting.

43. The Plaintiff disputes the Proposed Undisputed Fact #60. The Plaintiff States that the Application for the DHCD grant drafted by TPL insured that TPL would not receive the grant it sought because of its boasting reference to a $70 million in lines of credit. (See Z to Plaintiff's Memorandum, MacDonnell's April 1, 2003 letter to the DHCD).

44. The Plaintiff disputes the Proposed Undisputed Fact #63. The Plaintiff states that TPL did not have a list of donors and did not fundraise. (See Exh. GG to Plaintiff's Memorandum, TPL-KUN03677 (On January 30, 2003 Erin Rowland, the New England Public Relations Director of TPL, advised TPL and MacDonnell

to spend as little as possible on fundraising); <u>see</u> <u>also</u> Exh. FF to Plaintiff's Memorandum, TPL-KUN1621; <u>see</u> <u>also</u> Exh. HH to Plaintiff's Memorandum, TPL-KUN01681-82; <u>see</u> <u>also</u> Exh. EE to Plaintiff's Memorandum, Furman00087).

45. The Plaintiff disputes the Proposed Undisputed Fact #64.  The Plaintiff states that TPL knew prior to the execution of ROFR that TPL could not subdivide the Plaintiff's Property.  (<u>See</u> Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 179, ln. 4 – ln. 22 and pg. 151, ln. 3 – ln. 12 and pg. 168, ln. 5 – pg. 169, ln. 10; <u>see</u> <u>also</u> Exh. R to Plaintiff's Memorandum, TPL-KUN01167; <u>see</u> <u>also</u> Exh. S to Plaintiff's Memorandum, TPL-KUN01231).

46. The Plaintiff disputes the Proposed Undisputed Fact #65.  The Plaintiff states that no renovations were undertaken on the Property by TPL because TPL did not (and does not) own the Property and as such it could not have conducted any renovations.

47. The Plaintiff disputes the Proposed Undisputed Fact #66.  The Plaintiff states that there is no admissible evidence of a valid request by TPL.  In addition, TPL knew, at the time of such request, if any, that (1) it was unlikely to receive an approval for subdivision (<u>See</u> Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 179, ln. 4 – ln. 22 and pg. 151, ln. 3 – ln. 12 and pg. 168, ln. 5 – pg. 169, ln. 10; <u>see</u> <u>also</u> Exh. R to Plaintiff's Memorandum, TPL-KUN01167; <u>see</u> <u>also</u> Exh. S to Plaintiff's Memorandum, TPL-KUN01231); and that (2) it was unlikely that it would receive an approval from its own Board of Directors to purchase the Property.  (<u>See</u> Exh. W to Plaintiff's Memorandum, TPL-KUN01144-45).

13

48. The Plaintiff disputes the Proposed Undisputed Fact #68. The Plaintiff states that she did object to TPL's effort to purchase all 50.67 acres of her property, rather than the 8.57 acres as described in the P&S.

49. The Plaintiff disputes the Proposed Undisputed Fact #69. The Plaintiff states that Proposed Undisputed Fact #69 is hearsay on hearsay because Sommerlad did not witnessed any such statement by the Plaintiff and as such it is not admissible as evidence. (See Federal Rule of Evidence Rule 801).

50. The Plaintiff disputes the Proposed Undisputed Fact #71. The Plaintiff states that TPL knew that it would not obtain the zoning relief it sought well before it exercised the ROFR. (See Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 179, ln. 4 – ln. 22 and pg. 151, ln. 3 – ln. 12 and pg. 168, ln. 5 – pg. 169, ln. 10; see also Exh. R to Plaintiff's Memorandum, TPL-KUN01167; see also Exh. S to Plaintiff's Memorandum, TPL-KUN01231).

51. The Plaintiff disputes the Proposed Undisputed Fact #72 is disputed. The Plaintiff states that TPL knew since January of 2003 that the zoning it sought would not be granted. (See Plaintiff's Memorandum in Support of Plaintiff's Motions for Summary Judgment). The Plaintiff further states that in January of 2003, TPL and MacDonnell had reason to believe that they could not meet variances and special permits requirements. (See Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 179, ln. 4 – ln. 22 and pg. 151, ln. 3 – ln. 12 and pg. 168, ln. 5 – pg. 169, ln. 10; see also Exh. R to Plaintiff's Memorandum, TPL-KUN01167; see also Exh. S to Plaintiff's Memorandum, TPL-KUN01231). The Plaintiff further states that on January 9, 2003, TPL was

informed that it would have to go before Stow's Zoning Board of Appeals because of frontage deficiencies. (<u>See</u> Exh. Q to Plaintiff's Memorandum, TPL-KUN00181). In addition, MacDonnell's indicate that TPL would need too many variances.

> "[D]on't even bother trying to create 2 lots out the
> cristing [sic] compound. Too many variances; too much
> uncertainty. One large lot."

(<u>See</u> Exh. R to Plaintiff's Memorandum, TPL-KUN01167). Thus, TPL was aware that it would need (1) a variance for frontage, (2) a special permit for changing the Property line; and (3) a special permit for the caretaker's house. (<u>See</u> Exh. S to Plaintiff's Memorandum, TPL-KUN01231).

52. The Plaintiff disputes the Proposed Undisputed Fact #73. The Plaintiff states that TPL did not even know if it would even purchase the Property because it did even have the approval to purchase it and would not know if TPL would obtain such approval until "later of [that] summer [2003]". (<u>See</u> Exh. W to Plaintiff's Memorandum, TPL-KUN01144-45).

53. The Plaintiff disputes the Proposed Undisputed Fact #74. The Plaintiff states that TPL did not have difficulties in fundraising because TPL did not even start to fundraise. On July 23, 2003, Peter Christianson, a professional fundraiser and a member of FORA, wrote to other FORA members, and stated:

> "They [TPL] already used several of the contacts that I
> [Peter Christianson of FORA] provided for other [TPL's]
> projects while at the same time telling their [TPL's] **staff
> to hold off on fund raising for this project** [for the
> purchase of the Plaintiff's property]. I feel raped. The
> false paradigm here is that they are implying that they are
> limited to the prospect pool I generated. The fact is that
> there are plenty of more prospects, and they need to
> identify and solicit them."

(emphasis added)(See Exh. EE to Plaintiff's Memorandum, July 23, 2003 email of Peter Christianson to FORA, bates # Furman0087, first and fourth paragraphs).

FORA alerted the Board of Selectmen of this fact:

```
"[I]t was TPL that decided not to fund raise during the critical
period from January through June, directing their staff and our
citizen group to suspend our fundraising."
```

(See Exh. FF to Plaintiff's Memorandum, TPL-KUN1621, letter from FORA to Perry, the Chairman of Board of Selectmen).

54. The Plaintiff disputes the Proposed Undisputed Fact #75. The Plaintiff states that TPL told her that it had the money. (See Exh. L to Plaintiff's Memorandum, Kunelius deposition, Vol. II, pg. 90, ln. 13 – ln. 16; pg. 54, ln. 21 – pg. 55, ln. 1 and pg. 44, ln. 21 – pg. 45, ln. 21; see also Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 4, ¶6; see also Exh. H to Plaintiff's Memorandum, Affidavit of Kachajian, pg. 2, ¶4). The Plaintiff further states that TPL told the DHCD that TPL had $6 million line of credit with Wainwright Bank. (See Exh. Y to Plaintiff's Memorandum, KUN-TPL00343). In addition, MacDonnell wrote to the DHCD that TPL had over $70 million in lines of credit. (See Exh. Z to Plaintiff's Memorandum, letter of MacDonnell to DHCD re: $70 million in lines of credit).

55. The Plaintiff disputes the Proposed Undisputed Fact #78. The Plaintiff states that TPL's actions gave the Plaintiff's Property bad reputation. The Plaintiff's property was referred to as a "poison property".". (See Exh. F to Plaintiff's Memorandum, Boothroyd Deposition, pg. 162, ln. 10 ln. 15 and pg. 183, ln. 12 – 16).

56. The Plaintiff disputes the Proposed Undisputed Fact #79.  The Plaintiff states that the Property remains for sale but is not actively marketing it.  (See Exh. L to Plaintiff's Memorandum, Kunelius deposition, Vol. II, pg. 125, ln. 13 – pg. 126, ln. 10).

57. The Plaintiff disputes the Proposed Undisputed Fact #80 is disputed.  The Plaintiff has contacted the potential buyers.  (See Exh. E to Plaintiff's Memorandum, Kunelius deposition, pg. 40, ln. 10 – pg. 22; pg. 43 and pg. 43, ln. 20 – ln. 24).  In addition, the Plaintiff's broker continues to try to sell the Property.  (See Exh. F to Plaintiff's Memorandum, Boothroyd deposition, pg. 152, ln. 24 – pg. 153, ln. 5 and pg. 154, ln. 15-17; see also Exh. I to Plaintiff's Memorandum, Affidavit of Boothroyd, pg. 3, ¶5).

58. The Plaintiff disputes the Proposed Undisputed Fact #81.  The Plaintiff states that she had considered and reviewed several proposals.  However, no formal offer was ever received by the Plaintiff where the offer was using the offeror's money to purchase the Property.  (See Exh. G to Plaintiff's Memorandum, Affidavit of Kunelius, pg. 5, ¶12; see also Exh. F to Plaintiff's Memorandum, Boothroyd deposition, pg. 152, ln. 15 – ln. 20 ("I would not characterize this [Christianson's and Furman's letter of May 26, 2004] as an actual offer.  It's more of a proposal."); see also Exh. Q to Plaintiff's SJM[1], Furman deposition, Vol. II, pg. 96, ln. 22 – pg. 101, ln. 21)).

---

[1] Plaintiff's Summary Judgment Motions Against The Town of Stow, The Trust for Public Land, Craig A. MacDonnell, and the Partnership of Unknown Name Between the Town of Stow and The Trust for Public Land.

59. The Plaintiff disputes the Proposed Undisputed Fact #82.  The Plaintiff states that TPL had a plan to prevent the 40B on her Property.  (See Exh. A to Plaintiff's Memorandum, MacDonnell deposition, pg. 193, ln. 19 – pg. 194, ln. 1).

60. The Plaintiff disputes the Proposed Undisputed Fact #83.  The Plaintiff states that there was no offer for the Property in place based upon the water value under the Plaintiff's Property, nor there is any assurance that the water can be retrieved from the Property without the cooperation of Stow.  (See Exh. 1 attached hereto, Affidavit of Kunelius, pg. 2, ¶5).

Respectfully submitted,

Marilyn Kunelius,

By her Attorney,

Dated: November 16, 2007    By:    _/s/ Michael C. McLaughlin_
Michael C. McLaughlin BBO# 337350
Law Offices of Michael C. McLaughlin
One Beacon Street, 33rd Floor
Boston, MA 02108
617-227-2275
michaelcmclaughlin@speakeasy.net

## CERTIFICATION UNDER LOCAL RULES 7.1

I, Michael C. McLaughlin, certify that I have conferred with opposing counsel and have attempted in good faith to resolve and narrow the issue.

Dated: November 16, 2007    _/s/ Michael C. McLaughlin_
Michael C. McLaughlin

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 16, 2007.


<u>*/s/ Michael C. McLaughlin*</u>
Michael C. McLaughlin

# EXHIBIT 1

UNITED STATES DISTRICT COURT
(DISTRICT OF MASSACHUSETTS)

CIVIL ACTION NO. 05-11697-GAO

| | |
|---|---|
| MARILYN KUNELIUS, PLAINTIFF | ) ) ) |
| V. | ) ) |
| TOWN OF STOW separately, A PARTNERSHIP OF UNKNOWN NAME BETWEEN TOWN OF STOW and THE TRUST FOR PUBLIC LAND, THE TRUST FOR PUBLIC LAND separately and CRAIG A. MACDONNELL, in his individual capacity, DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) |

## AFFIDAVIT OF MARILYN KUNELIUS

I, Marilyn Kunelius, under oath do state:

1.  I am the owner of a property located at 142 and 144 Red Acre Road, Stow, Massachusetts that consists of uplands, wooden wetlands, a scenic pond, a vernal pool, two houses, a barn, a paddock and a pasture, of which 42 acres are designated as forest land under M.G.L. c. 61 (the "Property").

2.  I ran a horse farm on a portion of the Property. I have and continue to rent horse stalls to horse owners. The rentals of my stalls include the regular maintenance of the stalls and two indoor and outdoor turnouts, the feeding of the horses, and the purchase of the food for the horses.

3.  I have also engaged professionals to snowplow the Property in order to maintain access for my customers.

4-2001 04:28     2076972033
1/15/07  10:40 FAX                          JEFFERY GLASSMAN                                    PAGE1

4. In addition to my horse farm business, I also harvested timber and fire wood on my Property until 2004.

5. In 2006, as a result of this litigation, I engaged the services of Geosphere Environmental Management, Inc. in order to ascertain the value of the water beneath my Property. However, I have never received any valid offer for the Property that would be based upon the water value beneath the Property. I do not believe the water can be retrieved from my Property without the cooperation of the Town of Stow.

Signed under the pains and penalties of perjury this _15th_ day of November, 2007.

_Marilyn Kurtelius_
Marilyn Kurtelius

04-2001 04:15     2076972033                                                              PAGE3